601 So.2d 47 (1992)
Lula Mae MILES
v.
The CATCHINGS CLINIC and Dr. Robert Lewis.
No. 89-CA-537.
Supreme Court of Mississippi.
June 3, 1992.
Roy Maughan, Maughan Atkinson & Martin, Baton Rouge, La., Gary L. Honea, Magnolia, for appellant.
Stephen P. Kruger, Upshaw Williams Biggers Page & Kruger, Claire M. Porter, Jackson, for appellees.
Before DAN M. LEE, P.J., and ROBERTSON and McRAE, JJ.
McRAE, Justice, for the Court:
This is a case of the unenlightened being led by the inept in search of a sack of goodies from the unwilling. A jury was unwilling to give the goodies absent the requisite evidence. The appeal stems from a judgment rendered pursuant to the jury's verdict for defendants in a wrongful death/medical negligence/products liability action tried in the Circuit Court of Wilkinson County. We are called upon to address the following issues:
I. Is the jury verdict contrary to the greater weight of the evidence?
II. Did the court abuse its discretion in refusing to grant a mistrial-change of venue after the trial had commenced?
III. Did the court err in granting defendant's Instruction No. D-23?
Finding no merit in the issues presented, we affirm.

FACTS
On August 31, 1984, Mrs. Gertrude Miles, accompanied by her daughter, Lula Mae Miles, sought medical aid and attention for gouty arthritis at the Catchings Clinic (Catchings) in Woodville. Mrs. Miles had renal impairment estimated to be in excess of sixty percent (60%). She was examined by Dr. Robert Lewis (Lewis) who *48 prescribed Indocin and Zyloprim, the brand name for the drug Allopurinol. Lewis prescribed 100 mg. tablets of Allopurinol three times per day. Mrs. Miles began taking the medication on Friday. On Sunday she discontinued the medication when her daughter observed a rash and blisters on Mrs. Miles' body. On Monday Dr. Lewis was called and apprised of Mrs. Miles' condition. He advised immediate discontinuance of the medication and requested that Mrs. Miles be brought to the clinic.
Without notifying Dr. Lewis, Mrs. Miles was taken to the hospital emergency room in Centreville, where she was seen and admitted to the hospital by Dr. James M. Poole, the on-duty physician. Dr. McGraw, another physician of Catchings then examined and began treating Mrs. Miles. The blisters and bullous lesions increased in number and severity. Mrs. Miles' surface skin sloughed off, exposing her body to infections and further complications. She was transferred to the Delta Medical Burn Center in Greenville where she was treated until October 15, 1984, when she expired from complications of transcutaneous epidermal necrolysis (Stephens/Johnson Syndrome), a hypersensitivity reaction to certain drugs.
In May 1985, Mrs. Lula Mae Miles, administratrix of the estate of Gertrude Miles, deceased, (Miles) filed her complaint pursuant to the Mississippi Wrongful Death statute on behalf of her three brothers, her sister, and herself, who constitute all the heirs of decedent. The complaint alleged that Lewis, individually and as agent for Catchings, negligently and without adequate warning of the adverse side effects associated with the use of the drug, prescribed Zyloprim for decedent, who suffered a severe allergic reaction to it, resulting in her death. The complaint also alleged that Burroughs-Wellcome Company (Burroughs), a foreign corporation, was liable for breach of warranty for failing to adequately warn of the serious adverse reactions it knew or should have known its medication would cause to decedent. Damages were sought against all defendants.
The alleged cause of action against Burroughs was settled and a judgment dismissing them was rendered. The cause proceeded to trial against Drs. Lewis and Catchings.
To sustain her allegations of violation by Lewis of the applicable standard of care, Miles offered expert testimony of two experts, Dr. Earl Aldinger and Dr. Rick Wiseman. The following testimony was elicited by the court from Dr. Aldinger:
Q: Is it your testimony that the defendant, Dr. Robert Lewis, did or did not depart from the standard of care as established by recognized pharmacological literature in prescribing Allopurinol to this decedent?
A: No, he did not.
Q. All right. Is it your testimony that he did or did not depart from the standard of care as established by recognized pharmacological literature in prescribing the dosage that he prescribed to the decedent?
A: He did not.
On cross-examination of Dr. Wiseman the record reflects the following:
Q: Last month, I believe, on August the 6th of 1988; and I have placed in front of you a copy of that deposition in case we need to refer to it. Now, did you not tell us on that day that Dr. Lewis' prescription of 300 mg. of Allopurinol to Mrs. Gertrude Miles was not medical malpractice?
A: I believe I said that, yes.
Q: You did say that under oath at that time? Now you have  do you cling to what you said in the deposition that it was not medical malpractice 
* * * * * *
A: I think that's a legal term; I would not consider it malpractice as a legal term. It's a difficult  I think the dose is too high. I think it's a little more  that addresses one concern here  I think the dose is too high given her renal impairment.
* * * * * *
Q: And you can't say whether or not it was outside the standard of care?

*49 A: I've never read anywhere that it is outside the standard of care.

LAW

I. IS THE JURY VERDICT CONTRARY TO THE GREATER WEIGHT OF THE EVIDENCE?
Miles filed no post-trial motions for judgment notwithstanding the verdict or for a new trial. We have repeatedly held that an assignment of error in this Court  that the evidence did not support the jury's finding  will not be considered by this Court where no timely motion for a new trial was made in the trial court. Mississippi State Highway Commission v. S.B. Grisham, 331 So.2d 925 (Miss. 1976); T.G. Blackwell Chevrolet Company v. Eshee, 261 So.2d 481 (Miss. 1972); West Brothers, Inc. v. Barefield, 239 Miss. 530, 124 So.2d 474 (1960). Also see Estate of Briscoe, 255 So.2d 313, 314 (Miss. 1971).
Moreover, the record is replete with evidence supporting the jury verdict. This assignment is without merit.

II. DID THE COURT ABUSE ITS DISCRETION IN REFUSING TO GRANT A MISTRIAL-CHANGE OF VENUE?
Miles attempts to come in the back door by arguing that a change of venue and mistrial should have occurred after the fact  the trial. First, the record is devoid of any motion to change venue. First, Miles would have us overlook the fact that she selected venue of the action. Second, by including Burroughs Welcome Company, a foreign corporation, as an original party defendant, the suit could have been filed and maintained in Hinds County. Third, Miles cites an incident which occurred with a juror who allegedly expressed some of his opinions during the trial at a service station. The juror and the witness to the incident were questioned by the judge in chambers concerning the comments made. Upon the conclusion of the interview of the juror and witness, the court engaged in the following colloquy with counsel for Miles:
THE COURT: ... My personal opinion is Mr. Wells should not be asked to served on the jury any further, but I'm going to leave it to you. We've got one alternate juror ...
MR. MAUGHAN: (Counsel for Miles) Your Honor, we think that anything that was said may have been embellished a little bit and we think the man is a man of integrity... . We think if the Judge would admonish the jury again this is not to be decided on any friendship or pressure because you may have to face these doctors, but on the facts, then we would go with this juror.
THE COURT: In other words you have no objection to the juror, Samuel Wells, continuing to hear the case?
MR. MAUGHAN: I think the man told the truth here....
Wells was permitted to remain on the jury panel. The record shows without contradiction that when the trial court offered to replace the over-speaking juror, Miles agreed that the juror should remain on the panel. Having made this decision, Miles waived any right to subsequently complain.
In sum, the record does not reflect an abuse in the trial court's discretion in refusing to grant a mistrial and change of venue under the established facts in this case. See Maxwell v. Illinois Central Gulf RR, 513 So.2d 901 (Miss. 1987).

III. DID THE COURT ERR IN GRANTING DEFENDANT'S INSTRUCTION D-23?
Miles finally asserts reversible error because the trial court gave instruction number D-23 which reads as follows:
The Court instructs the jury that the sole issue remaining for your determination on the question of liability is whether Dr. Robert Lewis gave Gertrude Miles, deceased, a warning concerning potential side effects of the drug Zyloprim. If you find from a preponderance of the evidence that Defendant Lewis did give a warning and you further find that such warning was acceptable for the standard of care of a minimally competent internal medicine specialist in the *50 United States for one in like medical circumstances as Mrs. Gertrude Miles, deceased, then you must find for the Defendant, Dr. Robert Lewis.
When this instruction was granted, Miles made the following objection:
It's  the instruction is defective because there were two issues. One was whether there was an informed consent and another issue of liability is whether there was an informed consent given by Dr. Robert Lewis to Mrs. Miles.
This instruction is further defective because it's in conflict with Plaintiff's instruction 4-A, which is an informed consent instruction, our instruction. And that 4-A tells the jury that there is an element in the case, and defendant's D-23 says it isn't an element in the case. It's prejudicial to tell the jury that there's only one issue in the case.
The question whether Mrs. Miles gave informed consent revolves around whether she was adequately warned concerning the side effects of the drug. Instruction D-23 goes directly to that question. As such, it is not in conflict with Plaintiff's informed consent Instruction 4-A.
Miles' objections are misplaced. First, Miles' own experts testified that Dr. Lewis' prescription of Zyloprim and the dosage met the applicable standard of care. For this reason, the court sustained part of Lewis and Catchings' motion for directed verdict. Inexplicably, no error was alleged by Miles concerning the court's ruling  post-trial or on appeal. On the basis of the record presented to us, Miles acquiesced in the court's ruling and wholly failed to preserve for appellate consideration any issue arising from the ruling. Apparently Miles realized that the testimony of her own experts had "proved her out of court" on this issue. If anything, Miles received more consideration than she was entitled to under the facts adduced and the court's ruling.
We are also mindful of the repeated pronouncements of this Court, that so long as the instructions taken collectively adequately and properly instruct the jury on the issues, an individual instruction given the jury will not constitute reversible error. Detroit Marine Engineering v. McRae, 510 So.2d 462, 467 (Miss. 1987); Susan Garcia v. Coast Electric Power Association, 493 So.2d 380 (Miss. 1986); Mississippi Farm Bureau Mutual Insurance Company v. John W. Todd et al., 492 So.2d 919 (Miss. 1986). An error in one instruction is cured by another when the instructions are considered as a whole. Roberts v. State, 458 So.2d 719, 721 (Miss. 1984).
For the reasons stated above, this cause is affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BANKS, JJ., concur.