# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-CA-00601-SCT

*ANNYE C. ANDERSON, AS PERSONAL
REPRESENTATIVE AND LEGATEE OF THE
ESTATE OF CARRIE H. THOMPSON,
DECEASED; AND ROBERT M. HARRIS,
LEGATEE OF THE ESTATE OF CARRIE H.
THOMPSON, DECEASED*

*v.*

*STEPHEN C. LAVERE, DELTA HAZE
CORPORATION, A NEVADA CORPORATION;
SONY MUSIC ENTERTAINMENT, INC., A
DELAWARE CORPORATION, AND CLAUD L.
JOHNSON*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/23/2012 |
| TRIAL JUDGE: | HON. W. ASHLEY HINES |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JAMES W. SHELSON |
| | REUBEN V. ANDERSON |
| | ROBERT GREGG MAYER |
| | STEPHEN E.  NEVAS |
| ATTORNEYS FOR APPELLEE: | RICHARD A. OAKES |
| | ANTHONY KORNARENS |
| | ANITA K. MODAK-TRURAN |
| | JOHN W. KITCHENS |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 02/20/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., CHANDLER AND PIERCE, JJ.**

**DICKINSON, PRESIDING JUSTICE, FOR THE COURT:**

**STATEMENT OF THE CASE**

¶1. Legendary blues musician Robert Johnson died in 1938 without a will. The legatees of Johnson's deceased half-sister sought to recover royalties and fees from the use of two photographs of Johnson. Among the several reasons the trial court denied their claim was that the statute of limitations had expired. We affirm.

**FACTS**

¶2. When Johnson died intestate on August 16, 1938, he had no money and appeared to have left no assets to distribute to his heirs, so no estate was opened at that time. But the increasing popularity of Johnson's music over the years following his death led Steven LaVere, a music producer from Tennessee who owns Delta Haze Corporation, to contact Johnson's half-sister, Carrie Thompson, about previously unpublished photographs of Johnson. Believing Thompson to be Johnson's only heir, LaVere requested a meeting with Thompson to discuss possibly using the photographs to launch a new release of Johnson's music.

¶3. On June 12, 1973, Thompson met with LaVere and showed him a photo taken by Hooks Brothers Photography in Memphis, Tennessee, which depicted Johnson wearing a pin-striped suit, fedora hat, and polished dress shoes, while holding his Gibson guitar. Thompson allowed LaVere to take this photo – later to become known as the "Hooks Brothers" photograph – to have negatives made.

¶4. On LaVere's second visit, Thompson showed him a different photograph that depicted Johnson in front of a curtain with a cigarette in his mouth, holding a Gibson guitar. This

photograph – which appears to be a self-portrait taken at a photo booth in the 1930s – later became known as the "dime store photo."

¶5.    Sony Music Entertainment, Inc. ("Sony") – owner of the master of Johnson's recordings[1] – already had published albums of Johnson's music. Based on the discovery of the photographs and biographical information of Johnson's life, LaVere pitched the idea of rereleasing Johnson's music to John Hammond, then vice-president of Sony.[2]  LaVere initiated these discussions with Sony in the summer of 1973.

¶6.    LaVere's negotiations with Sony prompted negotiations between LaVere and Thompson, through counsel.  On June 25, 1974, Thompson appointed LaVere as her agent, granting him the right

> to do any and all things necessary, and to execute any and all documents, contracts, file copyrights, and institute litigation and any and all other things necessary or proper to protect my rights or the rights of my deceased brother.

¶7.    Thompson's attorney drafted this agreement to allow LaVere to continue negotiations with Sony pertaining to the rerelease of Johnson's recordings.  Then, on November 20, 1974, LaVere and Thompson entered into a comprehensive agreement ("the 1974 Agreement"), which included a royalties and fees provision.

---

[1]Johnson originally recorded his masters with American Record Company in 1936 and 1937. A few years later, Columbia Broad Casting Systems ("CBS") purchased American Record Company.  Thereafter, Sony Music purchased CBS.  Throughout these acquisitions, Johnson's masters changed ownership to each acquiring company, leaving Sony the current owner.

[2] Though at this point in time Sony was known as CBS, Sony later purchased CBS.  For purposes of clarity, CBS will be referred to as Sony, since Sony now stands in the place of CBS and is party to this lawsuit.

¶8.    The 1974 Agreement stated that Thompson, as Johnson's known living heir, agreed to transfer to LaVere "all of her right, title and interest, including all common law and statutory copyrights, in and to the musical works and recordings of Robert L. Johnson, a photograph of Robert L. Johnson taken by Hooks Brothers Photography in Memphis, Tennessee . . . [and] a small photograph of Johnson with a guitar . . . ." But Thompson, her heirs and assigns, would retain ownership and possession of all original photographs.

¶9.    In return, LaVere agreed to "use his best efforts to obtain commercial utilization of such photograph or photographs and memorandum in conjunction with the recordings of and or by Robert L. Johnson as well as in books, magazines or other media, and to take all steps necessary to register or protect the statutory copyright," and he would pay Thompson fifty percent of all royalties collected by him.

¶10.   This 1974 Agreement also stated that Thompson was "acting upon the representations to the effect that she is the nearest next of kin of Robert L. Johnson . . . . She understands and agrees that in the event that there are other heirs of Robert L. Johnson who would have a right to the payment of such sums, she shall be responsible for the payment . . . ."

¶11.   After Thompson and LaVere finalized the 1974 Agreement, Sony entered into a separate and independent contract with LaVere and Thompson dated November 21, 1974 ("the CBS agreement"). In this agreement, Thompson and LaVere agreed to assign their rights in Johnson's music, as well as their rights in two photographs, services, artwork, and biographical information to be used in conjunction with the release of the album *Robert Johnson: The Complete Recordings* ("*The Complete Recordings*"). Sony agreed to pay all royalties and fees to LaVere, but it never agreed to pay Thompson any royalties or fees

4

directly. Instead, LaVere was responsible for paying to Thompson any money generated from the CBS agreement, in accordance with the terms of the 1974 agreement.

¶12. After that, the project stalled,[3] but LaVere continued to push Sony to release *The Complete Recordings*, and the album finally debuted on August 28, 1990. The album sold more than one million copies and, as of 2009, Thompson's royalty agreement with LaVere had generated more than one and half million dollars. Sony paid all money due and owing under the CBS agreement to LaVere.

¶13. Thompson passed away in February 20, 1983, leaving her estate to her half-sister, Annye Anderson, and her grandson, Robert Harris. Then in 1989, her legatees – Anderson and Harris – opened Johnson's estate in Leflore County. When the estate was opened, Anderson and Harris believed they were the sole heirs to the Johnson estate. But in the years to follow, litigation ensued to determine the legal heirs of Johnson's estate and, in 1998, the chancery court entered a final judgment proclaiming Claud Johnson, Johnson's biological son, as the sole heir of the estate.

¶14. Prior to the chancery court naming Claud Johnson as Johnson's sole heir, Anderson, as the adminstratrix of Johnson's estate, swore under oath that the photographs and copyrights of the photographs belonged to the Johnson estate. Anderson also submitted accountings listing the photographs as assets of Johnson's estate, and she requested payment

---

[3] Issues included a Robert Johnson impersonator claiming royalties from the music; a rumor that Johnson had a wife and child, bringing into question whether Thompson was Johnson's lawful heir; and a threatened lawsuit from Mack McCormick, who claimed a contractual right to the photographs.

for her duties as adminstratrix based on a percentage of the estate's total assets, which included the photographs.

¶15. Then, in 1991 the chancellor appointed Willis B. Brumsfield administrator of Johnson's estate. Brumsfield entered into an agreement with LaVere, on behalf of the estate, ratifying both the 1974 agreement and the CBS agreement. LaVere then paid all royalties and fees due and owing under the agreements to the Johnson estate. As of March 22, 1999, the property of the Johnson estate was transferred to Claud Johnson.

¶16. Anderson and Harris now assert that the photographs belonged to Thompson, personally, and not to Johnson's estate. While Anderson and Harris do not dispute that the copyrights in Johnson's musical compositions belong to Claud Johnson, they argue that, as the heirs of Thompson, they are entitled to the fees generated from the Johnson photographs, as those were Thompson's personal property.

## PROCEDURAL HISTORY

¶17. Anderson and Harris filed a complaint against Claud Johnson, Stephen LaVere, Delta Haze,[4] and Sony, asserting claims of fraud, misrepresentation, concealment, conversion, unjust enrichment, unfair competition and business practice, and breach of fiduciary duty. They also asserted a breach-of-contract claim against LaVere.

¶18. The complaint was filed in Hinds County, but Claud Johnson moved the court for a change of venue, which it granted. The trial court allowed Anderson and Harris to continue the action in either Copiah County, where Claud Johnson lived, or Leflore County, where

---

[4] Stephen LaVere owns Delta Haze. Further, Delta Haze and LaVere have jointly submitted briefs and arguments throughout all of this litigation. Thus, "the LaVere defendants" will be used to refer to Delta Haze and LaVere collectively.

6

Johnson's estate was administered. Anderson and Harris filed an interlocutory appeal of the transfer order, which this Court denied on November 29, 2000. Anderson and Harris then chose to transfer to Leflore County.

¶19. On January 31, 2001, the LaVere defendants moved for a dismissal of the claims, or, in the alternative, for summary judgement. On August 8, 2001, Sony joined that motion. Without addressing three alternative arguments, the trial court granted the motion for summary judgment on the basis of *res judicata*. We reversed and remanded the case to the Leflore County Circuit Court.

¶20. On January 4, 2005, the LaVere defendants moved to dismiss or, in the alternative, for summary judgment on the defenses not originally adjudicated, and Sony joined this motion. This circuit court took no action on this motion for six years.

¶21. Then, on January 21, 2011, Sony awoke the lawsuit by moving for approval of a license to use the photographs of Johnson for a new compilation of Johnson's music called *The Centennial Collection*, which was to be a tribute to Johnson's 100th birthday. Sony sought permission among all parties to use the photographs in the packaging of this album, subject to a licensing fee which would be held by Sony until resolution of this dispute. LaVere and Claud Johnson agreed, but Anderson and Harris did not, so Sony filed an Emergency Motion for a License, which the trial court granted.

¶22. In April 2011, both Sony and the LaVere defendants filed separate supplemental motions for summary judgment. Claud Johnson joined Sony's motion. Anderson and Harris then filed a motion for partial summary judgment against the LaVere defendants. The trial court granted the LaVere defendants' motion to renew defenses not adjudicated in their

7

motion for summary judgment, eventually holding that the doctrines of laches, judicial estoppel, and collateral estoppel precluded all of the plaintiffs' claims.

¶23. The trial court also granted Sony's supplemental motion for summary judgment – which was joined by Claud Johnson, and the LaVere defendants' supplemental motion for summary judgment, finding that the claims also were time-barred. The trial court entered judgment orders against Anderson and Harris and denied any remaining motions. Anderson and Harris now appeal, arguing that the trial court improperly granted all of the defendants' motions for summary judgment.

## DISCUSSION

¶24. We apply a de novo standard of review to the trial court's ruling on summary judgment.[5] Summary judgment is appropriate only when there is no genuine issue of material fact.[6] If there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law, summary judgment should be entered in that movant's favor.[7] In considering a motion for summary judgment, courts view the evidence in the light most favorable to the nonmoving party. Although appellants raise several issues, we shall address only the statute of limitations, which we find to be dispositive.

*Anderson and Harris failed to argue waiver of the state statute-of-limitations defenses in the trial court.*

---

[5] ***Indem. Ins. Co. of N. Am. v. Guidant Mut. Ins. Co.***, 99 So. 3d 142, 149 (Miss. 2012).

[6] Miss. R. Civ. P. 56(c).

[7] ***Chisolm v. Miss. Dep't of Transp.***, 942 So. 2d 136 (Miss. 2006).

8

¶25.    In granting the motions for summary judgment, the trial court ruled that Anderson's and Harris's claims were time-barred by the Federal Copyright Act's statute of limitations[8] and Mississippi's general, three-year statute of limitations.[9]  In their brief, Anderson and Harris argued that the LaVere defendants had waived both their preemption and their Federal Copyright Act affirmative defenses by failing to timely raise and pursue them, as required under this Court's caselaw.[10]

¶26.    At oral argument, Anderson and Harris expanded their position, asserting that the LaVere defendants, Sony, and Claud Johnson had waived the right to argue any statute of limitations as an affirmative defense. After requesting supplemental briefing on this issue, we find that the Anderson and Harris are procedurally barred from making this broader argument on appeal.

¶27.    This Court has held that "absent extreme and unusual circumstances – an eight-month unjustified delay in the asserting and pursuing a dispositive affirmative defense, coupled with active participation in the litigation process, constitutes waiver as a matter of law."[11]  In order to raise such an argument before this Court, however, Anderson and Harris must have first

---

[8] 17 U.S.C. § 507 (West, Westlaw through P.L. 113-74 (excluding P.L. 113-66 and 113-73) approved 1-16-14.).

[9] Miss. Code Ann. § 15-1-49 (Rev. 2012).

[10] *See Meadows v. Blake*, 36 So. 3d 1225 (Miss. 2010).

[11] *MS Credit Ctr., Inc. v. Horton*, 926 So. 2d 167, 180 (Miss. 2006).

raised this argument in the trial court – which they did not. We will not consider issues raised for the first time on appeal.[12]

¶28.    At the inception of this litigation in 2000, Claud Johnson and Sony asserted all applicable statutes of limitations as affirmative defenses. Similarly, in their answer, the LaVere defendants averred that the statute of limitations in Section 15-1-1, *et seq.,* of the Mississippi Code barred Anderson's and Harris's claims. While the LaVere defendants, Sony, and Claud Johnson did not pursue the statute of limitations as a defense for some time, Anderson and Harris did not argue wavier.

¶29.    Then, in April 2011, the LaVere defendants filed a supplemental motion for summary judgment, adding both federal preemption and the Federal Copyright Act statute of limitations as affirmative defenses. In response to this motion, Anderson and Harris – for the first time – argue waiver. Anderson and Harris, however, argue that waiver applied only to the LaVere defendants, and only to the federal preemption and the copyright statute of limitations defenses. But, in their response to the LaVere defendants' supplemental motion, Anderson and Harris concede that the LaVere defendants properly pleaded and did not waive their right to assert the state statute of limitations under Section 15-1-49.

¶30.    Anderson and Harris, however, argue that the trial court already found that they did not waive their right to object to the LaVere defendants' untimely assertion of affirmative defenses. After filing their supplemental motion for summary judgment, the LaVere defendants filed a "motion seeking determination that plaintiffs have waived the right to

_____

[12] ***Flagstar Bank, FSB v. Danos***, 46 So. 3d 298, 311 (Miss. 2010) ( stating "we need not consider this issue, which has been raised for the first time on appeal") (citing ***Alexander v. Daniel***, 904 So. 2d 172, 183 (Miss. 2005)).

object to the assertion of additional defenses by defendants LaVere and Delta Haze, or in the alternative, for leave to amend answer to assert additional defenses." In response, the trial court issued an order ruling that Anderson and Harris did not waive their right to object to the LaVere defendants' addition of two *new* affirmative defenses – federal preemption and the copyright act statute of limitations. The trial court then granted the LaVere defendants leave to amend their original answers to include these defenses. This ruling clearly applied only to the addition of any affirmative defenses not originally pleaded in the LaVere defendants' answers, and therefore does not include the three-year state statute of limitations, which all defendants pleaded in their original answers.

¶31.    The record indicates that, prior to oral argument before this Court, Anderson and Harris never asserted that the LaVere defendants, Sony, and Claud Johnson had waived the state statute of limitations as an affirmative defense. We therefore must find, consistent with our longstanding caselaw, that Anderson and Harris are barred from raising this argument for the first time on appeal.[13] Further, because we find the state statute of limitations controls this case, it is unnecessary to address whether the trial court properly allowed the LaVere defendants to raise federal preemption and the Federal Copyright Act statute of limitations eleven years into the litigation.

---

[13] ***Boyles v. Miss. State Oil & Gas Bd.***, 794 So. 2d 149, 153 (Miss. 2001) ( "It is a well-settled proposition that this Court will not review matters on appeal that were not considered by the lower court.").

***Anderson and Harris failed to file suit within the statute of limitations.***

¶32.   Section 15-1-49 states that "[a]ll actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after." Anderson and Harris do not dispute that Section 15-1-49 is the controlling statute of limitations[14] which applies to claims of fraud,[15] misrepresentation,[16] concealment,[17] breach of fiduciary duty,[18] conversion,[19] unjust enrichment,[20] unfair

---

[14] It should be noted that, in their brief, Anderson and Harris argued that the constructive-trust statute of limitations under Mississippi Code Section 15-1-39 controlled their claim for unjust enrichment. At oral argument, however, Anderson and Harris informed the Court that they were abandoning their constructive-trust argument. Thus, we will not consider the ten-year, constructive-trust statute of limitations.

[15] ***Fletcher v. Lyles***, 999 So. 2d 1271, 1276 (Miss. 2009) (This Court applied the three-year statute of limitations to fraud, negligence, and breach-of-contract claims.).

[16] ***CitiFinancial Mortgage Co. v. Washington***, 967 So. 2d 16, 17 (Miss. 2007) (This Court applied the three-year limitations period to breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, fraudulent misrepresentation, and breach of contract.).

[17] ***Carter v. Citigroup***, 938 So. 2d 809, 817 (Miss. 2006) (citing ***Stephens v. Equitable Life Assurance Soc.'y of U.S.***, 850 So. 2d 78, 82 (Miss. 2003) (holding that "this Court has also applied the three-year statute of limitations [in Mississippi Code Section 15-1-49] for fraudulent concealment, negligent hiring, and concealment).

[18] ***Carter***, 938 So. 2d at 817 (citing ***Am. Bankers' Ins. Co v. Wells***, 819 So. 2d 1196, 1200 (Miss. 2001) (holding that "there is a three year statute of limitations [in Mississippi Code Section 15-1-49] for claims of breach of a fiduciary duty, misrepresentation, and conspiracy)).

[19] ***Estate of Martin Luther King Jr., Inc. v. Ballou***, 856 F. Supp. 2d 860, 863 (S.D. Miss. 2012) (holding that "claims for conversion and replevin are governed by Mississippi's residual statute of limitations [Mississippi Code Section 15-1-49]. . .).

[20] Miss. Code Ann. § 15-1-49(1) (Rev. 2012) ("All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after.").

competition and business practice,[21] and breach of contract.[22]  Thus, Section 15-1-49 clearly governs all of Anderson's and Harris's claims.

¶33.    Under Section 15-1-49, the three-year statute of limitations begins to run when the cause of action accrues,[23] and we have held that the "cause of action accrues when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested."[24]  The trial court found that Anderson's and Harris's claims accrued no later than August 29, 1990, when they learned that Sony intended to release *The Complete Recordings* using the photographs.  And Anderson and Harris filed their complaint in 2000 – long after the three-year statute of limitations expired.  Anderson and Harris assert, however, that the statute of limitations was tolled by this Court's holding in *LaVere I,*[25] and that their claims did not accrue until October 15, 1998, when the chancery court adjudicated Claud Johnson sole heir of the Johnson estate.

¶34.    In *LaVere I,* we stated that Anderson and Harris had no obligation to litigate ownership of the photographs in the Johnson estate heirship proceeding.[26]  Anderson and Harris argue that this statement tolled the statute of limitations for all of their claims arising

---

[21] *Id.*

[22] ***CitiFinancial Mortgage***, 976 So. 2d at 17 (This Court applied Section 15-1-49 to plaintiff's breach-of-contract claim.).

[23] Miss. Code Ann. § 15-1-49(1) (Rev. 2012).

[24] ***Bullard v. Guardian Life Ins. Co. of Am.***, 941 So. 2d 812, 815 (Miss. 2006) (quoting ***Forman v. Miss. Publishers Corp.***, 195 Miss. 90, 14 So. 2d 344, 346 (1943)).

[25] ***Anderson v. LaVere***, 895 So. 2d 828 (Miss. 2004).

[26] ***Id.*** at 837.

13

out of the ownership of the photographs until after the conclusion of the heirship proceeding in 1998. We disagree.

¶35.     In *LaVere I*, we merely held that Anderson and Harris were under no obligation to litigate, nor could they litigate, ownership of the photographs in the heirship proceedings.[27] Our holding in no way tolled the statute of limitations on any claims they may have had against the LaVere defendants over ownership of the photographs. Anderson and Harris could have brought a separate civil action asserting their claims.

¶36.     Also, we note that during the heirship proceedings, Anderson and Harris did not claim the photographs belonged to Thompson. Rather, they claimed the photographs were assets of the Johnson estate. They assert that they did not bring a separate action because they thought they were the only heirs to the Johnson estate, and thus they were entitled to the photographs as Johnson's heirs. So, only after losing the estate case did Anderson and Harris bring a separate action claiming that Thompson – and not the estate – owned the photographs. This strategy cannot serve to toll the statute of limitations.

¶37.     Though it is likely, as the trial court ruled, that Anderson and Harris discovered their cause of action in 1990 when they learned of Sony's upcoming release of *The Complete Recordings*, there is no question that they were aware of their injury – and their claims against all appellees – at the latest in 1991, when LaVere began paying all royalties and fees under the 1974 agreement to the Johnson estate, rather than to Thompson's estate. Claiming to be Johnson's sole heirs, both Anderson and Harris were parties to all of the Johnson estate proceedings. Indeed, Anderson and Harris opened Johnson's estate, and Anderson acted as

---

[27] *Id.* at 837.

the Aministratrix of that estate until 1991.  Anderson obviously was aware that LaVere had made royalty payments to the Johnson estate, rather than the Thompson estate, since it was Anderson who listed the photographs as assets of the Johnson estate.

¶38.   Additionally, Anderson and Harris – as Thompson's legatees – knew in 1991 that Thompson's estate had not been paid any money earned from the use of the pictures.  Neither Anderson nor Harris disputes that he or she knew the funds were being paid to the Johnson estate.  Instead, they argue that, since they believed themselves to be Johnson's heirs and entitled to the profit from the pictures through Johnson's estate, there was no need to make the claim.  We must reject this argument.  We find that Anderson's and Harris's cause of action accrued, at the latest, in 1991, when LaVere began paying royalties and fees to the Johnson estate.  Therefore, Anderson's and Haris's claims are time-barred under the three-year statute of limitations in Mississippi Code Section 15-1-49.

## CONCLUSION

¶39.   We find that Anderson's and Harris's claims are barred by the three-year statute of limitations in Section 15-1-49, so we affirm the trial court's grant of summary judgment.

¶40.   **AFFIRMED**.

**WALLER, C.J., RANDOLPH, P.J., LAMAR, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.  KITCHENS, J., NOT PARTICIPATING**.