# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-00397-COA

**ABBY JOHNSON ROBINSON AND NEW ENGLAND CONTRACTORS LLC**                                           **APPELLANTS**

**v.**

**ANSHIKA SINGH**                                           **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/25/2019 |
| TRIAL JUDGE: | HON. JOHN HUEY EMFINGER |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | TONEY ANTHONY BALDWIN |
| | ABBY GALE ROBINSON |
| ATTORNEYS FOR APPELLEE: | JONATHAN B. FAIRBANK |
| | HARRY MONROE SIMPKINS |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 04/21/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE J. WILSON, P.J., TINDELL AND C. WILSON, JJ.**

**J. WILSON, P.J., FOR THE COURT:**

¶1.     In June 2008, Abby Robinson and Anshika Singh entered into the first of a series of agreements under which Singh loaned Robinson money to be repaid within ninety days. The first agreement was written and signed by both parties; the second agreement was written and signed by Robinson only; and the remaining agreements were oral agreements on the same basic terms. Robinson made repayments to Singh until May 2010. Robinson paid back the initial loan, but Singh claimed that Robinson still owed her about $60,000. In September 2011, Singh sued Robinson for breach of contract in the County Court of Madison County.

Robinson answered and asserted a number of counterclaims against Singh.

¶2.    The case eventually proceeded to trial in July 2017.  At trial, Robinson admitted that she signed the initial agreement and testified that she eventually repaid that loan in full.  She claimed that her signature on the second agreement was forged, she denied entering into any other loan agreements, and she claimed that except for the first loan, all payments she received from Singh were simply gifts from a friend.  The jury returned a $100,000 verdict in favor of Singh.

¶3.    Robinson appealed to the circuit court, arguing that the jury's verdict was against the weight of the evidence; that the trial judge should have granted a new trial; that Singh's claim was barred by the statute of limitations; that the trial judge erred by allowing video testimony from the notary public who notarized the second written agreement; and that the case should have been dismissed for a lack of prosecution.  The circuit court held that all of Robinson's claims were waived or without merit and affirmed the judgment of the county court.  Robinson appealed again, raising the same issues.  After review, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶4.    On June 17, 2008, Abby Robinson and Anshika Singh signed an agreement for Singh to loan Robinson $102,375.  The agreement provided that Robinson would repay the $102,375 loan within ninety days.  The agreement also required Robinson to "pay a sum of $15,000" to Singh.  Later, there was a dispute as to whether the $15,000 payment was intended as a repayment of principal or as a payment in addition to the principal.

¶5.    At the time of the agreement, Robinson was forty-one years old and owned and

2

operated a construction business.[1] Singh was twenty-two years old, had recently obtained a bachelor's degree in accounting from Mississippi College, and was pursuing a master's degree in finance and accounting. Singh and her mother owned and operated Ansh Food Mart on Northside Drive in Jackson, which Singh's parents had opened in 1992.

¶6. Robinson's husband Ricky was an officer with the Jackson Police Department. Ricky patrolled the area near the Food Mart, and he often spent time there visiting Singh, her mother, and their employees. Singh had known Ricky since 2000 or 2001 and described him as a "family friend."

¶7. In June 2008, Robinson and Ricky asked Singh for a loan. Singh did not know Robinson at the time and had not heard of her construction company, but she agreed to make the loan based on her friendship with Ricky. Robinson drafted the loan agreement, which she and Singh signed on June 17, 2008. Singh gave Robinson a check for $92,175 made payable to Companion Property and Casualty Insurance Company.[2] Robinson's construction company, New England Contractors LLC, is listed on the check as the remitter.

¶8. Singh testified that Robinson came back to the Food Mart a few days later and asked for more money. According to Singh, Robinson prepared a written agreement for Singh to loan Robinson an additional $17,500 to be repaid within ninety days. A copy of the agreement was introduced at trial. It appears to have been signed by Robinson on June 23,

---

[1] After the time period at issue in this case, Robinson graduated from law school, was admitted to the bar, and represented herself at trial.

[2] The parties' agreement stated that Singh would loan Robinson $102,375, but Singh testified that Robinson requested a check for $92,175 made payable to the insurance company. Neither party explained the discrepancy between the agreement and the check.

2008, and was notarized by Mary Ann Grant. However, Robinson denied that she signed the second agreement and denied that any such agreement ever existed. Singh gave Robinson a check dated June 18, 2008, for $17,500 made payable to New England Contractors, but Robinson claimed at trial that this was just a gift from one friend to another, not a loan.

¶9. Robinson began making repayments to Singh. However, Singh also gave Robinson an additional $43,400 between June 30, 2008, and September 16, 2008. The additional payments from Singh to Robinson were not the subject of any written agreement. Singh testified that they were loans based on oral agreements between the parties, while Robinson testified that the payments were just gifts between friends. Singh testified that as with the written agreements, Robinson suggested the terms of the loan, including repayment within ninety days. Singh presented evidence at trial that she made the following loans to New England Contractors pursuant to oral agreements on the following dates:

    $5,000 on June 30, 2008
    $2,500 on July 7, 2008
    $3,000 on July 10, 2008
    $5,000 on July 30, 2008
    $5,000 on August 6, 2008
    $5,000 on August 12, 2008
    $5,000 on August 19, 2008
    $1,500 on August 27, 2008
    $4,000 on September 2, 2008
    $5,000 on September 9, 2008
    $2,400 on September 16, 2008

Thus, from June 17 to September 16, 2008, Singh loaned (according to Singh) Robinson a total of $153,075.

¶10. Robinson made total repayments to Singh of $106,300 from July 2, 2008, to May 4,

4

2010. Robinson's final payment was made on May 4, 2010. Singh testified that she told Robinson her failure to repay the loans within ninety days, as promised, was unacceptable. Robinson told Singh to hire a lawyer and that they would take it up in court.

¶11. At trial, Singh contended that the original agreement was ambiguous as to the purpose of the $15,000 payment from Robinson to Singh. She wanted the contract to be construed against Robinson because Robinson drafted it. Singh also alleged that Robinson had promised to pay her interest, although she testified that the parties never agreed on an interest rate, and she admitted that neither of the written agreements mentioned interest.

¶12. Robinson testified that she had more than repaid the original loan by paying Singh $106,300. She claimed that the extra money was another instance of money exchanged between friends and that the additional $60,900 that Singh gave her after June 17 was simply a series of gifts from her friend. She testified that she and Singh often did favors and gave each other gifts without expectation of repayment. Robinson also denied signing the June 23 loan agreement for $17,500.

¶13. In addition, Robinson claimed that Singh drafted the original written agreement. She testified that the $15,000 payment provided for in the June 17 agreement was simply a gift between friends. Robinson claimed that her friendship with Singh came to an end in 2010 after Singh asked her to do some "unethical" things involving Robinson's construction business. Robinson also alleged that Singh was overcharging Robinson's construction employees for check-cashing services.

¶14. After Robinson testified and denied signing or even knowing about the June 23, 2008

5

loan agreement (for $17,500), Singh asked the court to allow the notary public who notarized the agreement, Mary Ann Grant, to testify via Skype. Robinson objected to Grant's testimony, but the court overruled Robinson's objection. In 2008, Grant worked at a branch of Trustmark National Bank on Northside Drive in Jackson and was a licensed notary public.[3] Grant testified that she maintained a log book of documents that she notarized and that she kept the log book and her seal in a locked desk drawer. Her log book from 2008 showed that on June 17, 2008, she acknowledged Robinson's signature on a contract. A signature, purportedly Robinson's, appeared next to her name in the log book, along with Robinson's home address and driver's license number. Grant's log book also showed that she acknowledged Robinson's signature on another contract on June 23, 2008. That entry also included Robinson's home address, driver's license number, and signature.

¶15. Grant testified that her usual procedure as a notary public was to check the signatory's identification and record the same in her log book. She also recorded the date and time of the acknowledgment and the type of document notarized, and she then obtained the signatory's address and signature. Grant testified that, nine years after the fact, she did not have an independent recollection of notarizing the contracts at issue. However, she also testified that she had no reason to believe that anyone other than Abby Robinson signed the contracts. On cross-examination, Grant denied that she frequented the Food Mart or that she and Singh were friends or even acquaintances. She also denied that anyone else had access to her log book or her seal.

---

[3] At the time of trial, Grant was an assistant vice president and branch manager for Trustmark in Memphis.

¶16. The trial judge instructed the jury on the general principles of contract law and breach of contract. The jury was also given the following definition on damages:

> "Damages" is the word used to describe the injury suffered by [Singh], if any and the amount of money that will compensate [Singh] for those injuries. [Singh] has to prove with some certainty what damages she suffered, if any. However, [Singh] does not have to prove the exact amount of her damages. If Singh has proved her claims against [Robinson] are more likely true than not true, then you may reasonably estimate [Singh's] damages.
>
> You may consider the following factors in determining the amount of damages, if any, to award [Singh] for breach of contract:
>
> The amount of money that it would take to put [Singh] in the same position as she would have been in if [Robinson] had not breached the contract.

The jury was given the same instructions regarding Robinson's alleged damages on her counterclaim against Singh for breach of contract.[4] The jury was instructed that if they found in favor of either Singh or Robinson on their respective claims, the form of the verdict should read, "We find for [Singh/Robinson] and award damages in the amount of _____."

¶17. After the jurors had deliberated for some time, they sent a note out asking, "How do we award court fees and attorney fees with the damages? (Since we don't know what those are)." Robinson stated, "I believe the jury should award as they feel. Just pick a number." After further discussion, and with the agreement of the parties, the trial judge instructed the jury to base their decision on the evidence and the instructions that had already been given to them. The jury later sent out a second note, this time asking if they could word their verdict as follows: "We, the jury, find for the plaintiff/defendant and award damage in the

---

[4] The trial judge had granted Singh's motion for a directed verdict as to all of Robinson's other counterclaims.

amount of X dollars plus attorneys fees, plus court costs."

¶18.    The trial judge surmised that the jury was confused about the issue of attorney's fees because the parties had not presented any evidence regarding the amount of fees. A discussion ensued between the judge and the parties, and Robinson clearly stated, "[W]e want the jury to decide attorney fees." Eventually, both parties agreed that the judge should instruct the jury as follows: "You may say 'court costs.' You should choose a reasonable amount for attorney fees, if any, based on the evidence."

¶19.    The jury returned a verdict in Singh's favor that stated: "We the jury find for the plaintiff and award damages in the amount of $100,000 plus court costs." Robinson stated in open court that she would "seek an appeal," and she subsequently filed a notice of appeal. However, she did not file any post-trial motions in the county court.

¶20.    The parties filed briefs in the circuit court, and the court ordered supplemental briefing on issues related to attorney's fees. The circuit court subsequently affirmed the judgment of the county court. The circuit court held that Robinson waived her challenges to the damages award and verdict because she did not file any post-trial motions in the trial court. The court likewise held that Robinson's challenge to a purported denial of a motion for a new trial was without merit because she never filed such a motion. The court also held that Singh filed her complaint within the statute of limitations. Finally, the court held that the trial judge did not abuse her discretion in any of her evidentiary rulings and that a predecessor judge did not abuse his discretion by refusing to dismiss the case for a lack of prosecution. Robinson filed a notice of appeal. After further review, we affirm.

8

**ANALYSIS**

¶21.    We begin by noting that "[a]s a practical matter, the present appeal is primarily from the ruling[s] of the county court rather than from the circuit court, which court had the role of an intermediate appellate court in the present case. . . . In other words, this Court reviews the [rulings] of the county court without any deference to the analysis of the circuit court." *W-T Holdings LLC v. Gilchrist*, No. 2018-CA-01488-COA, 2019 WL 6872938, at *5 (¶23) (Miss. Ct. App. Dec. 17, 2019) (brackets, quotation marks, and citation omitted).[5] With that in mind, Robinson raises the following issues on appeal: (1) "the verdict was against the weight of the evidence"; (2) "denial of a motion for a new trial was erroneous"; (3) Singh's "claim is barred by the statute of limitations"; (4) "discovery violations compromised [her] rights"; and (5) "failure to dismiss for lack of prosecution was an abuse of discretion." We address these issues below, combining the first two issues for purposes of discussion.[6]

**I.      Robinson waived her challenge to the verdict by not filing any post-trial motions.**

¶22.    Robinson argues that the jury's award of $100,000 is against the weight of the evidence because it is not clear how the jury reached that amount. Specifically, she argues that there was no evidence to support the jury's apparent award of attorney's fees because neither party presented any evidence of attorney's fees at trial. The circuit court held that

---

[5] "An appeal from county court to circuit court must be decided 'solely upon the record as made in the county court.'" *W-T Holdings*, 2019 WL 6872938, at *6 (¶24) (quoting Miss. Code Ann. § 11-51-79 (Rev. 2019)).

[6] In her first issue on appeal, Robinson asserts that she "made a timely appeal to the Madison County Circuit Court." There is no dispute that Robinson filed a timely notice of appeal; therefore, it is unnecessary to address this issue further.

9

Robinson had waived this issue by not raising the issue in the trial court.

¶23. Our Supreme Court has stated, "We have repeatedly held that an assignment of error in this Court—that the evidence did not support the jury's finding—will not be considered by this Court where no timely motion for a new trial was made in the trial court." *Miles v. Catchings Clinic*, 601 So. 2d 47, 49 (Miss. 1992). Similarly, in *Mississippi State Highway Commission v. Gresham*, 331 So. 2d 925 (Miss. 1976), the Supreme Court stated, "In a long line of cases, this Court has repeatedly held that an assignment of error in this Court that the verdict of the jury was excessive or that the evidence did not support the jury's finding will not be considered by this Court where no timely motion for a new trial was made in the trial court." *Id.* at 926. Robinson filed no post-trial motions in the trial court.[7] Therefore, we agree with the circuit court that Robinson waived any argument that the jury's verdict was excessive or lacked support in the evidence.

¶24. Robinson argues that she preserved this issue for appellate review because she "expressed her dissatisfaction with the verdict" by telling the trial judge in open court that she would appeal. However, under longstanding precedent, Robinson's simple statement that she would "seek an appeal" was insufficient to preserve her challenge to the verdict. A motion for a new trial was required.[8]

---

[7] Nor did she move for a directed verdict after Singh rested or at the close of the evidence.

[8] Moreover, as discussed above, although neither party presented any evidence of attorney's fees, Robinson insisted that the jury should award attorney's fees and then agreed that the trial judge should instruct the jury that they could award either party a "reasonable amount" of fees. Under the circumstances, Robinson invited any alleged error by the jury in awarding attorney's fees. *Busick v. St. John*, 856 So. 2d 304, 314 (¶25) (Miss. 2003) ("An

¶25. Inexplicably, Robinson also asserts as a second issue on appeal that the "denial of a motion for a new trial was erroneous." The circuit court correctly held that "[t]his contention is without merit on its face" because Robinson did not file a motion for a new trial. Without acknowledging the circuit court's ruling, Robinson repeats the same argument verbatim in her brief in this Court. As stated by the circuit court, this claim is without merit because Robinson did not file a motion for a new trial—or move for a directed verdict or file any other post-trial motions.

### II. Robinson failed to preserve her statute of limitations defense for appeal; in any event, Singh filed suit within the limitations period.

¶26. Robinson next argues that the trial judge erred by denying her pretrial motion to dismiss, pursuant to Mississippi Rule of Civil Procedure 12(b)(6), in which she had alleged that Singh's suit was barred by the statute of limitations. In her motion, Robinson argued that the statutory limitations period for each loan began running on the date she received each check. The trial judge disagreed and denied Robinson's motion but also stated that Robinson could raise the issue again if the evidence supported her defense. Robinson did not raise the issue again at trial or in any post-trial motion. Rather, on appeal to the circuit court, Robinson argued that the trial judge erred by denying her pretrial motion to dismiss.

¶27. "Rule 12(b)(6) motions should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim." *Lagniappe Logistics Inc. v. Buras*, 199 So. 3d 675, 677 (¶5) (Miss. 2016) (emphasis and quotation marks omitted). The standard applies to a defendant's assertion that a claim is barred by the statute

appellant cannot complain on appeal of alleged errors which he invited or induced.").

of limitations; thus, under Rule 12(b)(6), a complaint should not be dismissed based on the statute of limitations unless it appears beyond any doubt that the plaintiff will be unable to prove any set of facts under which her complaint was filed within the limitations period. *Id.* at 679 (¶¶15-16).

¶28. In prior cases, we have held that when a trial court denies a pretrial motion for summary judgment based on the statute of limitations because the court determines that there are genuine issues of material fact, the pretrial ruling is "rendered moot" by a subsequent trial on the merits. *Kronfol v. Johnson*, 283 So. 3d 1162, 1173 (¶¶19-20) (Miss. Ct. App. 2019), *cert. denied*, 283 So. 3d 733 (Miss. 2019). "When . . . [the trial] court has determined that a genuine factual dispute concerning the application of the [statute of limitations] precludes summary judgment, the defendant should litigate the issue at trial, move for a directed verdict on that ground, and then request appropriate jury instructions." *Miss. Valley Silica Co. v. Barnett*, 227 So. 3d 1102, 1119-20 (¶44) (Miss. Ct. App. 2016) (citing *Huss v. Gayden*, 991 So. 2d 162 (Miss. 2008)), *abrogated on other grounds by Portis v. State*, 245 So. 3d 457 (Miss. 2018). A failure to do so may waive the issue for purposes of appeal.

¶29. Although we have not considered whether the same reasoning may apply to a motion to dismiss, the United States Court of Appeals for the Fifth Circuit has held that

> [a]fter a trial on the merits, the sufficiency of the allegations in the complaint is irrelevant. . . . Rule 12(b)(6) measures the sufficiency of the plaintiff's allegations. When the plaintiff has prevailed after a full trial on the merits, a district court's denial of a Rule 12(b)(6) dismissal becomes moot. The plaintiff has proved, not merely alleged, facts sufficient to support relief. . . . [T]he sufficiency of the plaintiff's evidence may be tested by an appeal on that issue.

*Bennett v. Pippin*, 74 F.3d 578, 585 (5th Cir. 1996). Indeed, the Fifth Circuit concluded that "[t]he arguments for not considering an appeal from a denial of a Rule 12(b)(6) dismissal after a trial on the merits are stronger than those for not considering a [denial of summary judgment] under Rule 56[.]" *Id.* Other courts have likewise held that a pretrial ruling that a plaintiff pled sufficient facts to survive a motion to dismiss is not reviewable on appeal following a full trial on the merits.[9]

¶30. Consistent with our holdings in *Kronfol* and prior cases and the Fifth Circuit's persuasive reasoning in *Bennett*, we likewise hold that, as a general rule, a defendant may not appeal the pretrial denial of a Rule 12(b)(6) motion to dismiss but must challenge the legal sufficiency of the plaintiff's evidence at trial. *See* M.R.C.P. 50(a)-(b); *Barnett*, 227 So. 3d at 1120 (¶44). Robinson did not request any jury instructions based on the statute of limitations, nor did she move for a directed verdict or file a motion for judgment notwithstanding the verdict or any other post-trial motions. Therefore, we hold that Robinson failed to preserve this issue for appellate review.

¶31. Procedural bar notwithstanding, Robinson's argument is also without merit. The first agreement between Singh and Robinson was signed on June 17, 2008, and provided that

---

[9] *ClearOne Commc'ns Inc. v. Biamp Sys.*, 653 F.3d 1163, 1172 (10th Cir. 2011) ("We are persuaded by the Fifth Circuit's reasoning and hold that, as a general rule, a defendant may not, after a plaintiff has prevailed at trial, appeal from the pretrial denial of a Rule 12(b)(6) motion to dismiss, but must instead challenge the legal sufficiency of the plaintiff's claim through a motion for judgment as a matter of law."); *accord, e.g.*, *Denali Real Estate LLC v. Denali Custom Builders Inc.*, 926 N.W.2d 610, 621-22 (Neb. 2019) (citing *Bennett* and *ClearOne*); *Raider Ranch LP v. Lugano Ltd.*, 579 S.W.3d 131, 133-34 (Tex. App. 2019) (citing *Bennett* and *ClearOne*); *Simon v. Jackson*, 855 So. 2d 1026, 1029-30 (Ala. 2003) (citing *Bennett*).

Robinson would repay the loan within ninety days. The parties agree that Robinson has paid back the $102,175 originally owed under that initial agreement. At trial, Singh sought to recover on the additional loans that she made to Robinson between June 23 and September 16, 2008. Singh testified that all of those loans also had a ninety-day payback period. Thus, the June 23, 2008 loan came due on September 21, 2008. Singh filed her complaint on September 16, 2011.

¶32. There is no dispute that the limitations period for a claim for a breach of a written or unwritten contract is three years. Miss. Code Ann. §§ 15-1-29 & - 49 (Rev. 2019); *Anderson v. LaVere*, 136 So. 3d 404, 411 (¶32) (Miss. 2014); *Lott v. Pritchett Constr. Co.*, 141 So. 3d 437, 441 (¶10) (Miss. Ct. App. 2013). "[T]he . . . statute of limitations begins to run when the cause of action accrues, and . . . the cause of action accrues when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested." *Anderson*, 136 So. 3d at 411 (¶33) (footnote and quotation marks omitted). The cause of action for breach of the June 23, 2008 loan agreement did not accrue until Robinson breached the agreement by failing to make repayment on September 21, 2008. Robinson filed suit on September 16, 2011, within three years of that breach.

¶33. Thus, to summarize, the trial court's pretrial ruling that Singh had pled sufficient facts to survive a motion to dismiss became moot once the case proceeded to a full trial on the merits. In addition, Singh filed her complaint within the applicable limitations period.

### III. The trial judge did not abuse her discretion by allowing a witness to testify via Skype.

¶34. Robinson's next assignment of error asserts that "discovery violations compromised

[her] rights," but her primary argument is that the notary public, Mary Ann Grant, should not have been permitted to testify by video via Skype.

¶35.   We review a trial judge's decision regarding the admission of evidence, including testimony, for an abuse of discretion. *Teal v. Jones*, 222 So. 3d 1052, 1062 (¶32) (Miss. Ct. App. 2017).   We also review a trial judge's decision to allow a witness to testify telephonically—or, in this case, by Skype—for an abuse of discretion. *Brown v. Hewlett*, 281 So. 3d 189, 198 (¶34) (Miss. Ct. App. 2019).

¶36.   We find no abuse of discretion in the trial judge's ruling. Singh's counsel represented to the court that he did not realize that Grant's testimony would be needed until Robinson denied signing the June 23, 2008 agreement during a pretrial motions hearing five days prior to trial. On the morning of trial, Singh moved for a continuance so that she could depose Grant, who had relocated to Trustmark's main Memphis office, and obtain her notarial records through a subpoena. Robinson opposed the continuance, and the trial judge denied the continuance but stated that Grant would be allowed to testify via Skype, if her testimony was necessary. When Robinson testified during her case-in-chief, she denied that she had signed the June 23, 2008 agreement, and she alleged that the signature on the document was a forgery. The trial judge then allowed Singh to call Grant in rebuttal via Skype. As discussed above, Grant testified and was subject to vigorous cross-examination by Robinson. *See supra* ¶¶ 14-15. Under these circumstances, we cannot say that the trial judge abused her discretion by allowing Grant's testimony via Skype.

¶37.   Robinson also complains that "[t]he notary book was never produced in discovery."

15

However, it does not appear that Singh had copies of any of the relevant pages of the log book until they were obtained through a subpoena to Trustmark issued on the first day of trial. Trustmark's response to the subpoena was provided to both parties during the trial, and Grant authenticated the relevant pages of her notary log book and established the chain of custody for her log book. This issue is also without merit.

## IV. The county court did not abuse its discretion by declining to dismiss the case for a lack of prosecution.

¶38. Finally, Robinson argues that the county court should have dismissed the case in response to the clerk's motions to dismiss for lack of prosecution filed in August 2013 and December 2014 or Robinson's motion filed in February 2015. Singh responded to Robinson's motion, and the county court denied Robinson's motion in December 2015.

¶39. We apply an abuse-of-discretion standard of review to an order granting or denying a motion to dismiss for failure to prosecute under Mississippi Rule of Civil Procedure 41(b). *Sullivan v. Maddox*, 283 So. 3d 222, 233 (¶46) (Miss. Ct. App. 2019) (citing *Cox v. Cox*, 976 So. 2d 869, 874 (¶11) (Miss. 2008)). The law favors a trial on the merits; therefore, a court should be reluctant to dismiss a case for failure to prosecute. *Id.* at 234 (¶53). In considering a motion under Rule 41(b), the court should consider (1) whether there is a clear record of delay or contumacious conduct by the plaintiff; (2) whether lesser sanctions would better serve the interests of justice; and (3) whether there are any other "aggravating factors." *Id.* at 234-35 (¶54).

¶40. In this case, we cannot say that the county court abused its discretion by denying Robinson's motion to dismiss for a lack of prosecution. There is no evidence that Singh's

16

delay was contumacious or dilatory, nor is there any indication that Robinson was prejudiced by the delay.

## CONCLUSION

¶41.    Robinson waived her claim that the jury's verdict is excessive and lacks support in the evidence because she failed to file any post-trial motions in the trial court.  Robinson fails to identify any reversible error in the trial, and her remaining arguments are without merit.

¶42.    **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, TINDELL, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.  WESTBROOKS AND McDONALD, JJ., CONCUR IN PART AND DISSENT IN PART WITHOUT SEPARATE WRITTEN OPINION.**