JAMES, J.,
for the Court:
¶ 1. This case arises out of a wrongful-death action filed by Deliah Colyer on behalf of her deceased son, Marshuan Braxton. The trial court granted summary judgment in favor of First United Methodist Church of New Albany, On appeal, Colyer argues that the trial court erred by granting summary judgment. Finding error, we reverse and remand this case for a trial.
FACTS
¶2. On June 20, 2009, Braxton, along with other minors and adult chaperones, flew from Memphis, Tennessee, to Costa Rica on a mission trip. Braxton, a seventeen-year-old, was expecting to begin his senior year at New Albany High School when classes resumed for the 2009-2010 school year. The purpose of the mission trip was to construct a sanctuary in Villa Briceno, Costa Rica, and conduct other mission activities. The trip was led by Amanda Gordon, associate pastor of First United Methodist Church of New Albany, Mississippi (FUNA). Amanda coordinated the trip with missionary Wil Bailey through the regional United Methodist missions group. There were fifteen members on the mission trip from FUNA, with nine adults and six minors. Five other individuals, four adults and one minor, from First United Methodist Church of Brandon, Mississippi, also joined.
¶ 3. Before leaving for the mission trip, Elnora Howell, Braxton’s legal guardian and grandmother, signed two documents before a notary public as a condition of Braxton participating. These documents included a New Albany First United Methodist Church Youth Medical / Parent Consent form and a Parental Consent form. Braxton also signed a document entitled “Int. Missionary Profile and Release of Claim” that contained warnings about the dangers associated with participating in the mission trip.
¶4. The group arrived in San Isidro, Costa Rica, on June 20. On June 21, 2009, the group left San Isidro to travel to the worksite in Villa Briceno. Since they expected to ride on the bus for several hours, Bailey suggested they stop for lunch at a scenic site on their way to Villa Briceno. *1086 The group stopped and ate at a roadside café. After leaving the café, they stopped at the Dominicalito, a beach, located near the Pacific Ocean. The weather was clear, and there were a few picnic tables in the area. A few locals were also there. The group intended to go on a brief excursion and take photographs. ■ The bus driver suggested two or three areas on the beach for the group to visit.
¶ 5. The group separated into two or three smaller groups and headed to the suggested areas. Braxton, Mattie Carter, and Josh Creekmore, along with adult chaperones, Sam Creekmore and Mike Carter, went to a rock formation and climbed onto it to observe crabs. The adults eventually climbed down and walked behind the rock formation. Brax-ton, Mattie, and Josh stayed up top and continued to observe the crabs. While Braxton, Mattie, and Josh were still up top, a large wave crashed into the rock formation and knocked them into the ocean.
¶ 6. Mike and Sam immediately climbed back on the rock formation and saw Brax-ton, Mattie, and Josh swimming with their heads above water. The wave current, however, began to wash the minors away from the rock formation. Sam instructed them to swim around the rocks into an inlet area to reach safety on the beach. Mike climbed down closer to the water level. A second wave rose and knocked Mike into the ocean, and the current took him in the opposite direction of Braxton, Mattie, and Josh. Mike was eventually rescued by a local Costa Rican resident that had a life jacket and rope. Braxton, unfortunately, disappeared into the water before Mike was rescued. Mattie and Josh, however, were able to swim out onto the beach after being in the water for about five minutes.
¶ 7. Adam Gordon and his wife, Amanda, went to a different area of the beach, but because of the distance and obstructions blocking their view they were unable to see the minors. Adam testified that he was knocked down by a wave at the same time that the wave reached the area where Braxton, Josh, and Mattie were located, Amanda was standing nearby and saw the wave approaching Adam. Amanda yelled to her husband and then saw the wave knock him down. According to the Gor-dons, only one or two minutes passed before they had turned the corner of the taller rock formation and could see the rock where Braxton had been located. And it was at that time that they saw Mattie and Josh getting out of the water and Mike being rescued. However, according to Josh, fifteen to twenty minutes passed between Adam being knocked down by the large wave and the minors being swept into the water by another large wave.
¶ 8. The mission-trip members immediately began to seek help after seeing people on the beach reacting and in the water. The locals contacted emergency services by telephone, and residents in the area helped. The ambulance and local authorities arrived. Thereafter, everyone at the beach began to look for Braxton. The mission-trip group stayed on the beach for over three hours after the incident until darkness ended their search. Regrettably, Braxton’s body was found the next day and identified by Amanda, Adam, and Sam.
PROCEDURAL HISTORY
¶ 9. The complaint was filed on November 10, 2011, in the Circuit Court of Union County, Mississippi. FUNA filed its answer and defenses on March 16, 2012, and, after conducting discovery, filed it motion for summary judgment on March 5, 2014. *1087 A hearing was held on April 28, 2014, and resulted in the circuit court granting Col-yer’s request for additional time to conduct discovery. Colyer conducted additional discovery and depositions followed by the parties providing supplemental briefing. Another hearing was held on September 16, 2014. After considering all of the sworn evidence and the arguments of counsel, the circuit court found that no genuine issue of material fact existed to support Colyer’s claims of negligence. The circuit court entered an order granting FUNA’s motion for summary judgment on September 23,2014.
STANDARD OF REVIEW
¶ 10. We review the trial court’s grant or denial of summary judgment under a de novo standard. Moss Point Sch. Dist. v. Stennis, 132 So.3d 1047, 1049-50 (¶ 10) (Miss.2014).
Summary judgment is appropriate and shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Importantly, the party opposing summary judgment may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, will be entered against him.
Karpinsky v. Am. Nat’l Ins., 109 So.3d 84, 88 (¶ 10) (Miss.2013) (internal citations and quotation marks omitted). “[T]he evidence must be viewed in the light most favorable to the party against whom the motion has been made.” One S., Inc. v. Hollowell, 963 So.2d 1156, 1160 (¶ 6) (Miss. 2007).
I. The trial court erred by granting summary judgment, as genuine issues of material fact existed.
¶ 11. Colyer alleges that FUNA was negligent and FUNA owed a duty to supervise Braxton while the group was on the mission trip. FUNA’s position is that no negligence existed and that summary judgment was proper. The elements of a prima facie case of negligence are duty, breach, causation, and damages. Grisham v. John Q. Long V.F.W. Post, No. 4057 Inc., 519 So.2d 413, 416 (Miss.1988); Burnham v. Tabb, 508 So.2d 1072, 1074 (Miss. 1987). Colyer contends that FUNA owed a duty to Braxton to provide ordinary care while supervising him during this trip. Colyer alleges that the duty was breached, and that the negligent acts or omissions of FUNA caused the death of Braxton.
¶ 12. FUNA agrees that a duty was owed to supervise Braxton, but FUNA contends that Braxton’s age at the time of his death diminishes that duty. Nevertheless, our supreme court has held that adequacy of supervision is a question for the jury. Summers v. St. Andrew’s Episcopal Sch., 759 So.2d 1203, 1215 (¶¶ 48-50) (Miss. 2000); see also James v. Gloversville Enlarged Sch. Dist., 155 A.D.2d 811, 548 N.Y.S.2d 87, 88-89 (N.Y.App.Div.1989). Therefore, regardless of Braxton’s age, a jury must decide what constitutes proper and adequate supervision. See Todd v. First Baptist Church of W. Point, 993 So.2d 827, 829 (¶ 12) (Miss.2008).
¶ 13. There are also disputed facts regarding whether it was reasonable to expect Amanda to give Braxton warning after she witnessed her husband being knocked down by a wave. And we have determined that “[cjontradictory statements by a witness go to the weight and credibility of that witnesses] testimony, *1088 not its sufficiency, and a summary judgment motion does not place the trial court in the role of weighing testimony and determining the credibility of witnesses.” Jamison v. Barnes, 8 So.3d 238, 245 (¶ 17) (Miss.Ct.App.2008) (citation omitted).
¶ 14. Additionally, Colyer alleges other acts of negligence: (1) failure to research the dangers of the Pacific coast and (2) allowing the children, including Braxton, to go onto a dangerous rock structure on the coast of the Pacific Ocean without any knowledge of oceanic activities in Costa Rica.
¶ 15. We conclude that there are genuine issues of material fact as to whether FUNA provided ordinary care while supervising Braxton during this trip, and so we reverse the grant of summary judgment.
II. The trial court erred in granting summary judgment by considering the waivers of Howell and Braxton.
¶ 16. Even though Colyer raised this issue, it does not appear that the judge considered the waiver. In his opinion, the judge stated:
[The plaintiff] claims that the defendant is liable for the wrongful death of Mar-shuan Braxton, who die[d] from drowning during a mission trip to Costa Rica on June 21, 2009. Viewing the facts in a light most favorable to the plaintiff, the court finds no genuine issues of material fact exist[] to support [the] plaintiffs claim of negligence against the defendant. Therefore, this Court finds as a matter of law [the] defendant’s motion to dismiss shall be granted.
¶ 17. FUNA admits that it does not appear that the court relied on the release. However, FUNA states that the waivers are valid and bar recovery. It is undisputed that the parties in this appeal are not the same parties that executed the waivers. It appears that one of the waivers was signed by Howell, who was Braxton’s grandmother. She signed a “parental consent form,” but she is not a party to this action. Braxton, a seventeen-year-old minor at the time, appeared to have signed the release waiver.
¶ 18. Pursuant to Mississippi Code Annotated section 93-19-13 (Rev. 2013), Braxton could not legally sign a contract of this nature to waive liability.[1] Braxton’s contract was not legally binding because of his age and the nature of the contract. FUNA also alleges that the wrongful-death beneficiaries are bound by the contract of Braxton since they are third-party beneficiaries of Braxton’s contract. “[0]rdinary contract principals require a meeting of the minds between the parties in order for agreements to be valid.” Am. Heritage Life Ins. v. Lang, 321 F.3d 533, 538 (5th Cir.2003) (internal quotations and citations omitted). A contract cannot bind a nonparty. E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 308, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002).
¶ 19. The two waivers executed in this case are not binding on Colyer and the trial court was correct in not giving any effect to these two waivers in its opinion.
*1089 CONCLUSION
¶ 20. There is sufficient evidence before this Court to show that genuine issues of material fact exist as to whether FUNA’s supervision was negligent. Therefore, the trial court’s grant of summary judgment is reversed, and this case is remanded for a trial.
¶ 21. THE JUDGMENT OF THE UNION COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR A TRIAL. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
LEE, C.J., IRVING, P.J., BARNES AND FAIR, JJ., CONCUR. WILSON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, C.J., BARNES AND FAIR, JJ.; WILSON, J., JOINS IN PART. GRIFFIS, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. ISHEE AND GREENLEE, JJ., NOT PARTICIPATING.

. "All persons eighteen (18) years of age or older, if not otherwise disqualified, or prohibited by law, shall have the capacity to enter into binding contractual relationships affecting personal property. Nothing in this section shall be construed to affect any contracts entered into prior to July 1, 1976. In any legal action founded on a contract entered into by a person eighteen (18) years of age or older, the said person may sue in his own name as an adult and be sued in his own name as an adult and be served with process as an adult.” See also Garrett v. Gay, 394 So.2d 321, 322 (Miss.1981).