# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-CT-01654-SCT

*JAMES L. HUGHES*

*v.*

*SANDRA HUMPHREYS SHIPP, DAVID SHIPP,*
*INDIVIDUALLY, DAVID SHIPP d/b/a ROSE LAKE*
*LLC, AND ROSE LAKE LLC*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 09/13/2018 |
| TRIAL JUDGE: | HON. JAMES CHRISTOPHER WALKER |
| TRIAL COURT ATTORNEYS: | DENNIS L. HORN |
| | LEIGH KATHRYN PAYNE HORN |
| | JOHN PRINCE MARTIN |
| | JAMES H. HERRING |
| COURT FROM WHICH APPEALED: | YAZOO COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | DENNIS L. HORN |
| | SHIRLEY PAYNE |
| | LEIGH KATHRYN PAYNE HORN |
| ATTORNEYS FOR APPELLEES: | JOHN PRINCE MARTIN |
| | DONALD A. McGRAW, JR. |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 08/26/21 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.    Twice, James L. Hughes invested in the Shipp family's efforts to develop their

property near Bentonia, Mississippi, into a gated community called Rose Lake, in exchange

for lots in the future subdivision. And twice, Hughes came up empty handed. Hughes sued the Shipps. At the close of Hughes's case, the chancellor found the situation "very inequitable." Yet he still denied Hughes any equitable relief based on the running of the statute of limitations.

¶2. The Court of Appeals affirmed on alternate grounds. We granted Hughes's petition for writ of certiorari specifically to review Hughes's unjust-enrichment claim. And after review, we agree with the Court of Appeals that the statute of limitations should not have run from the date Hughes cut the checks for the lots but from the time his cause of action for unjust enrichment actually accrued. But we disagree with the Court of Appeals' deciding to resolve this fact-intensive question on appeal. We also disagree that the dismissal of this claim should be affirmed on alternate grounds, namely Hughes's failure to "identify a promise."

¶3. Unjust enrichment lies in a promise *implied in law*.[1] So Hughes's evidence of an *express* promise *was not* required for Hughes's unjust-enrichment claim to survive involuntary dismissal. Should the chancellor find Hughes's claim was timely, it should next consider whether Hughes proved unjust enrichment—that is, whether the Shipps are "in possession of money or property which in good conscience and justice [they] should not retain but should deliver to another[.]"[2]

---

[1] *Magnolia Fed. Sav. & Loan Ass'n v. Randal Craft Realty Co.*, 342 So. 2d 1308, 1311 (Miss. 1977).

[2] *Hans v. Hans*, 482 So. 2d 1117, 1122 (Miss. 1986) (quoting 66 Am. Jur. 2d *Restitution and Implied Contracts* § 11 (1973)).

¶4. We reverse the dismissal of Hughes's unjust-enrichment claim only and remand this claim to the trial court. We affirm the trial court's dismissal of all other claims.

## Background Facts and Procedural History

¶5. Hughes first paid property owner Tom Shipp $100,000 in July 2004. In exchange, Tom promised in writing to sell Hughes two lots of approximately four acres. These two lots were located to the west of an artificial lake in the proposed Rose Lake community. Three months later, Tom died. Hughes never probated a claim with Tom's estate. Nor did he otherwise assert an ownership in estate property. Instead, he continued to work with Tom's wife, Sandy, who was Tom's heir, and Tom's son, David. In 2008, at David's request, Hughes wrote a check to Rose Lake, LLC, for $33,000. The memo line stated the money was for "Investment Lot (total 3)."

¶6. After the development continued to stall, Hughes asked Sandy and David to meet with him in March 2015. Hughes walked away from the meeting thinking Sandy and David had "ratified" the agreement between Hughes and the late Tom. Sandy and David remember this meeting differently. After this meeting, Sandy and David avoided Hughes and refused to meet with him. So in September 2017, Hughes sued Sandy, David, and the now-defunct Rose Lake, LLC. Hughes's complaint asserted breach of contract and sought $133,000 in unjust enrichment, as well as other damages.

¶7. During the bench trial, at the close of Hughes's evidence, the Defendants moved for involuntary dismissal under Mississippi Rule of Civil Procedure 41(b). While sensitive to the "very inequitable situation" before him, the chancellor still granted the motion and

3

dismissed Hughes's case. As to Hughes's breach-of-contract claim, the chancellor found Hughes's theory rested solely on his assertion that Sandy and David in March 2015 had somehow orally ratified the 2004 agreement between the deceased Tom and Hughes. But the chancellor found there was no evidence of a meeting of the minds sufficient to support formation or ratification of a contract. As to Hughes's alternative implied-contract claim of unjust enrichment, the judge found the statute of limitations "has long since passed."

¶8. Hughes appealed. We assigned his appeal to the Court of Appeals, which affirmed. ***Hughes v. Shipp***, No. 2018-CA-01654-COA, 2020 WL 5525383 (Miss. Ct. App. Sept. 15, 2020). Specifically, the Court of Appeals held that, because of the Statute of Frauds, no valid contract for purchase of land occurred between Hughes and Tom in 2004. *Id.* at \*\*8-9. Consequently, the appellate court held there was no contract for Sandy and David to ratify in 2015. *Id.* at \*\*9-13. So Hughes's claims based on the existence of a contract between Tom and/or Sandy and David failed. *Id.* at \*13.

¶9. The Court of Appeals then turned to Hughes's request for damages based on equitable theories, including unjust enrichment. *Id.* The Court of Appeals disagreed with the chancellor that the three-year statute of limitations had run against these claims. *Id.* at \*14. But the appellate court still opted to affirm their dismissal. The court reasoned that Hughes had paid $100,000 to Tom. So when Tom died in 2004, any equitable claim based on this payment should have been made against Tom's estate, which has long since closed. *Id.* at \*15. Hughes wrote the $33,000 check to Rose Lake after Tom died. So this obviously is not an estate claim. But, according to the Court of Appeals, to recover under either equitable

4

theory of promissory estoppel or unjust enrichment, Hughes had to first "identify a promise," which he failed to do through his evidence presentation. *Id.* at \*17 (quoting *Leal v. Univ. of S. Miss.*, 296 So. 3d 660, 668 (Miss. 2020)).

¶10. Following the Court of Appeals' decision to affirm the judgment of dismissal, Hughes sought certiorari review. We granted the petition to review his specific claim that both the chancellor and the Court of Appeals failed to adequately consider his request for an equitable remedy.

**Discussion**

¶11. We do not disturb the chancellor's dismissal of Hughes's breach-of-contract claim. The Court of Appeals opinion provides a thorough discussion of why the Statute of Frauds precluded the existence of a contract to transfer property and why Hughes's ratification theory failed. *Hughes*, 2020 WL 5525383, at \*\*7-13.

¶12. Our concern on certiorari review is limited solely to Hughes's quasi-contract claim of unjust enrichment. "Unjust enrichment is an equitable remedy closely associated with 'implied contracts' and trusts." *Estate of Johnson v. Adkins*, 513 So. 2d 922, 926 (Miss. 1987). It "applies to situations *where there is no legal contract* but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another, the courts imposing a duty to refund the money or the use value of the property to the person to whom in good conscience it ought to belong." *Hans*, 482 So. 2d at 1122 (emphasis added) (quoting 66 Am. Jur. 2d *Restitution and Implied Contracts* § 11 (1973)). Stated differently, "unjust enrichment" is a "modern

designation for the doctrine of 'quasi-contracts' and the basis for an action for 'unjust enrichment' lies in a promise, which is implied in law, that one will pay to the person entitled thereto which in equity and good conscience is his." *Magnolia Fed. Sav. & Loan Ass'n*, 342 So. 2d at 1311.

¶13. Based on the evidence presented, the chancellor found Hughes's transferring $133,000 to the Shipps with "no benefit" in return was "inequitable to say the least." As the judge saw it, David "now lives in a nice pretty shiny new house, with fish that he basically stole, on land that it appears potentially Mr. Hughes had quite a bit of impact on providing that lifestyle." Yet the judge concluded legally there was no way to redress this inequity due to the running of the three-year statute of limitations.

## I.     Trial Court's Statute-of-Limitations Ruling

¶14. Claims for unjust enrichment fall under the three-year limitations period of Mississippi Code Section 15-1-49(1) (Rev. 2019). *Anderson v. LaVere*, 136 So. 3d 404, 411 (Miss. 2014). Hughes filed his action in September 2017. By this point, the chancellor concluded the three-year limitations period "has long since passed." David had argued that the three-year limitations period began to run in 2004 for the $100,000 payment and 2008 for the $33,000. Presumably, the chancellor agreed, tying the statute of limitations to when Hughes made the payments and entered into what he thought were binding agreements that he would receive property in exchange.

¶15. But for unjust enrichment, the three-year statute of limitations begins to run when the cause of action *accrues*, that is, "when it comes into existence as an enforceable claim." *Id.*

6

A breach-of-contract claim does not accrue when the contract is entered into—it begins when the contract is allegedly breached. *Young v. S. Farm Bureau Life Ins. Co.*, 592 So. 2d 103, 107 (Miss. 1991). Similarly, quasi-contract causes of action, like unjust enrichment, do not accrue when the implied promise is made that the defendant "will pay to the person entitled thereto which in equity and good conscience is his." *Magnolia Fed. Sav. & Loan Ass'n*, 342 So. 2d at 1311. The action instead accrues when that implied promise is *broken*. *Anderson*, 136 So. 3d at 411. Stated differently, it is not the initial possession but the unjust retention of money or property that triggers an enforceable unjust-enrichment claim. *Hans*, 482 So. 2d at 1122.

¶16.    Here, the Court of Appeals recognized the statute of limitations for unjust enrichment does not begin to run until the cause of action accrues. *Hughes*, 2020 WL 5525383, at *14 (citing *Anderson*, 136 So. 3d at 411). And based on its "review of the record," the appellate court determined Hughes's September 2017 complaint was timely because it was not until July 2015 that "Hughes first realized that the Defendants had no intention in completing the entire development . . . ." *Id.* We agree the chancellor apparently applied the wrong legal standard by tying the statute of limitations to when Hughes gave Tom and David the money. He should have instead looked to when Hughes knew or should have known he would receive neither the lots nor any benefit from the Shipps. We acknowledge there is record evidence suggesting Hughes's unjust-enrichment claim may not have accrued until much later than 2008. *But* this Court has recognized that, "[o]ccasionally, the question of whether the statute of limitations has run turns on the resolution of a fact question." *Lagniappe*

7

***Logistics, Inc. v. Buras***, 199 So. 3d 675, 676 (Miss. 2016).[3] And we find this case is one of those occasions.

¶17. The chancellor made no factual finding about when Hughes's unjust-enrichment claim accrued. Rather than resolve this factual question on appeal and declare his unjust-enrichment claim timely, as the Court of Appeals did, we find the better course is to remand to the trial court the question of when Hughes's unjust-enrichment cause of action accrued.

## II.    Court of Appeals' Alternate-Grounds Ruling

¶18. Even though it ruled Hughes's unjust-enrichment claim was timely, the Court of Appeals still affirmed the trial court's dismissal of this claim on other grounds.

¶19. First, the Court of Appeals agreed with the Shipps' assertion that any claim for unjust enrichment for the $100,000 Hughes paid Tom, upon Tom's death, became a claim against Tom's estate, which Hughes failed to bring within one year of Tom's death. ***Hughes***, 2020 WL 5525383, at *15 (citing Miss. Code Ann. § 15-1-55 (Rev. 2019)). Of course, as part of a de novo review, an appellate court "may affirm the chancellor's judgment if the right result was reached, even if the chancellor reached the result for the wrong reason." ***Cummins v. Goolsby***, 255 So. 3d 1257, 1258-59 (Miss. 2018) (citing ***Davis v. City of Jackson***, 240 So. 3d 381, 384 (Miss. 2018)). But, in this appeal, the standard of review is not de novo.

---

[3] We note that Hughes had cited ***Lagniappe Logistics*** in his brief to the Court of Appeals and in his petition for writ of certiorari to this Court, claiming *no* statute of limitations applies to claims for unjust enrichment. But that is not what the majority held in that case. Instead, the ***Lagniappe Logistics*** majority held that the application of the statute of limitations turned on a question of fact, which could not be resolved at the pleadings stage. ***Lagniappe Logistics***, 199 So. 3d at 676. The majority did not overrule ***Anderson***'s clear holding that the three-year statute of limitations applies to claims for unjust enrichment. ***Anderson***, 136 So. 3d at 411.

Instead, when reviewing a Rule 41(b) involuntary dismissal, "we do not consider the evidence de novo, but rather we apply the same substantial evidence/manifest error standards as are generally applicable when we are reviewing the findings of trial judges." *Davis v. Clement*, 468 So. 2d 58, 62 (Miss. 1985).

¶20. The Court of Appeals found "[a] glaring issue" with "the fact that at no point during these proceedings has Dr. Hughes filed a claim against Tom's estate." *Hughes*, 2020 WL 5525383, at *15. While the record is clear that Hughes did not file a claim against Tom's estate, the record is *unclear* if Hughes had to do so to preserve his unjust-enrichment claim. The standard for an involuntary dismissal is whether, when the evidence is considered fairly, the trial court would find for the defendant. *Stewart v. Merchs. Nat'l Bank*, 700 So. 2d 255, 259 (Miss. 1997) (citing *Century 21 Deep S. Props., Ltd. v. Corson*, 612 So. 2d 359 (Miss. 1992)). And here, the chancellor made no finding that Hughes's unjust-enrichment claim must be dismissed for not filing a claim against Tom's estate. Instead, when considering Sandy and David's argument that any claim for the initial $100,000 had to be brought against Tom's estate, the chancellor raised several concerns. He questioned whether, upon Tom's death, Hughes became a creditor of the estate. He also pondered whether Sandy had failed to timely notify Hughes of Tom's death, and if Sandy and David, through the now-defunct Rose Lake, LCC, were still unjustly enriched by Hughes's $100,000 investment. Much like the statute-of-limitations issue, instead of this Court's going beyond the bounds of Rule 41(b) and conducting a de novo review and making findings for the first time on appeal, we determine these questions are better suited for the chancellor to resolve on remand.

9

¶21.    Second, the Court of Appeals concluded that, even though David is still alive, Hughes failed to establish an unjust-enrichment claim based on the $33,000 David encouraged Hughes to invest in Rose Lake.  Quoting this Court's recent decision in **Leal v. University of Southern Mississippi**, the Court of Appeals determined Hughes had to "identify a promise" in order for his unjust-enrichment claim to survive.  **Hughes**, 2020 WL 5525383, at *17 (quoting **Leal**, 296 So. 3d at 668).

¶22.    But in **Leal**, Dr. Sandra Leal's "fail[ure] to identify a promise" defeated her claim for *promissory estoppel*.  **Leal**, 296 So. 3d at 668.  Like unjust enrichment, promissory estoppel is a quasi-contract theory of recovery, meaning it too is available when no binding contract has been formed.  **Bluewater Logistics, LLC v. Williford**, 55 So. 3d 148, 159 (Miss. 2011) (noting "promissory estoppel is a quasi-contract remedy"); *see also* **Noble v. Wellington Assocs., Inc.**, 145 So. 3d 714, 721 (Miss. Ct. App. 2013) ("Promissory estoppel legally enforces a promise made without consideration—so no contract was formed . . . .").  But promissory estoppel and unjust enrichment are not interchangeable.  *E.g.*, **Miss. Dep't of Env't Quality v. Pac. Chlorine, Inc.**, 100 So. 3d 432, 442 (Miss. 2012) (addressing the claims of promissory estoppel and unjust enrichment separately).

¶23.    As its name suggests, promissory estoppel occurs when "(1) a promise is made, (2) the promisor intended that the promise would be relied on, (3) the promise was in fact relied upon, (4) and a refusal to enforce the promise would contradict basic equitable principles."  **Leal**, 296 So. 3d at 667-68.  By contrast, unjust enrichment does not require identifying an express promise.  Instead, the promise is "implied in law."  **Magnolia Fed. Sav. & Loan**

*Ass'n*, 342 So. 2d at 1311. And the *implied* promise is "that one will pay to the person entitled thereto which in equity and good conscience is his." *Id.* Thus, contrary to the Court of Appeals' holding, Hughes was not required to provide evidence of David and Sandy's *express* promise to convey a third lot to him to establish they were unjustly enriched by Hughes's $33,000 payment. Instead, what is required is that Hughes prove Sandy and/or David are "in possession of money or property which in good conscience and justice [they] should not retain but should deliver to [Hughes] . . . ." *Hans*, 482 So. 2d at 1122.

¶24. We reverse the Court of Appeals opinion in part to the extent it affirmed the chancellor's involuntary dismissal of Hughes's unjust-enrichment claim. On remand the chancellor should decide if Hughes filed his unjust-enrichment claim within three years of when this cause of action accrued. If the claim is deemed timely, the chancellor should then decide if Hughes presented sufficient evidence of unjust enrichment to survive a Rule 41(b) motion to dismiss and proceed accordingly.

¶25. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**KITCHENS AND KING, P.JJ., COLEMAN, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. GRIFFIS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, C.J.**

**GRIFFIS, JUSTICE, DISSENTING:**

*I.     Standard of Review*

¶26. This case considers the chancellor's decision to grant an involuntary dismissal under Mississippi Rule of Civil Procedure 41(b). "Appellate courts . . . employ a more deferential standard of review when considering involuntary dismissals [at a bench trial] than when

11

reviewing grants of directed verdicts." ***All Types Truck Sales Inc. v. Carter & Mullings Inc.***, 178 So. 3d 755, 758 (Miss. Ct. App. 2012). A Rule 41(b) involuntary dismissal is reviewed under a "substantial-evidence/manifest-error standard," rather than the de novo standard applied when reviewing directed verdicts. ***Id.*** "A judge should grant a motion for involuntary dismissal if, after viewing the evidence *fairly*, rather than in the light most favorable to the plaintiff, the judge would find for the defendant." ***Id.*** (internal quotation marks omitted) (quoting ***Gulfport-Biloxi Reg'l Airport Auth. v. Montclair Travel Agency, Inc.***, 937 So. 2d 1000, 1004 (Miss. Ct. App. 2006)). "The court must deny a motion to dismiss only if the judge would be obliged to find for the plaintiff if the plaintiff's evidence were all the evidence offered in the case." ***Id.*** (internal quotation marks omitted) (quoting ***Gulfport-Biloxi Reg'l Airport Auth.***, 937 So. 2d at 1004-05).

II.     *The Chancellor's Ruling*

¶27.    Here, the chancellor ruled:

> This Court has heard significant testimony about Dr. Hughes paying sums of money, namely $100,000, to Tom Shipp, as well as $33,000 in May of 2008 to defendant herein, Mr. David Shipp.
>
> The aforementioned $100,000 was paid in 2004 to the now deceased Tom Shipp for various and sundry reasons related to a certain Rose Hill development around Bentonia, Mississippi.
>
> As best as this Court can ascertain, Dr. Hughes has received no benefit related to those monies. In fact, this Court, after hearing significant testimony and evidence, sees that there we have a very inequitable situation to say the least as it appears before this Court.
>
> It appears that Mr. Shipp now lives in a nice pretty shiny new house, with fish that he basically stole, on land that it appears potentially Mr. Hughes had quite a bit of impact on providing that lifestyle.

12

Inequitable to say the least, it appears based upon the presentations here over the last day and a half.

With that being said, equity follows the law. This Court is not in a position inconsistent with the law to swoop down and make everything equitable in the world.

The plaintiffs rest, as it appears to this Court, solely upon some oral ratification of some contract, depending on what pleadings you read, written or oral, with a Tom Shipp, now deceased, that was ratified at a certain restaurant, the Islander, a couple of years ago.

Absent this Court finding that some meeting of the minds was ratified at this Islander meeting, the plaintiff's relief is unattainable by the plaintiff. And this Court, having heard significant testimony related to all of the above, does not find that there was ever a meeting of the minds up to the standard of being able to be orally ratified by the parties at the subject meeting at the Islander restaurant.

Conversely, it appears that various and sundry proposals were set forth at that meeting in complete inconsistence with a ratification of a previous meeting of the minds by Dr. Hughes and the deceased, Tom Shipp.

With this Court being unable to find said ratification, the plaintiff herein cannot survive any analysis based upon any reading of any statue of limitations that might apply as to the $33,000; in all likelihood at best a three-year statute of limitation as it relates to the $100,000 to Mr. Shipp.

Any statue of limitations that could possibly apply, we won't even get into it because it doesn't matter, has long since passed.

As such, this Court has no choice. That would be the only reason why this Court would render this ruling. Has no choice consistent with the law that equity follows in all cases, but to grant the Rule 41 motion . . . .

III. *Dr. Hughes's Investments*

A. *Dr. Hughes's 2004 Payment to Tom Shipp*

¶28. On June 21, 2004, Dr. Hughes and Tom Shipp signed a document that read:

13

In consideration of the sum of One (1) dollar plus other good and valuable tender, I, Tom Shipp, sell and convey to [Dr. Hughes], two (2) lots of approximately four (4) acres each on a lake to be constructed on what is locally known as Rose Hill Plantation, Bentonia, Mississippi. Mr. Hughes shall have his choice of lots on the West side of the aforementioned lake upon completion.

¶29. The same day, Dr. Hughes presented Tom Shipp a check in the amount of $100,000. The check was payable to Tom Shipp, and Dr. Hughes wrote on the check that it was to participate in a "joint venture" to develop Rose Lake. Tom Shipp owned the Rose Lake property.

### B. Tom Shipp's Death

¶30. Tom Shipp died on October 21, 2004. Tom Shipp did not fulfill his agreement with Dr. Hughes. Upon his death, the Rose Lake property passed to Tom Shipp's wife, Sandra Humphreys Shipp.

### C. Dr. Hughes's 2008 Payment to David Shipp

¶31. On May 29, 2008, Dr. Hughes presented David Shipp a check in the amount of $33,000. The check was payable to "Rose Lake," and Dr. Hughes added David's name in parentheses. Dr. Hughes testified that this payment was to be used to develop more lots on the north end of the lake, and Dr. Hughes was to receive a third lot. Dr. Hughes's check included the statement "Investment lot (total 3)."

### D. The Lawsuit

¶32. Dr. Hughes never received a conveyance for any of lots at Rose Lake. Dr. Hughes commenced this action for breach of contract on September 13, 2017, against Sandra, David, and Rose Lake LLC.

14

*IV.     Claim for Unjust Enrichment*

*A.     Dr. Hughes's 2004 Payment to Tom Shipp*

¶33.    The evidence established that, on June 21, 2004, Dr. Hughes gave Tom Shipp a check for $100,000, and they signed an agreement.  Their agreement consisted of Dr. Hughes's investment of $100,000, and Tom Shipp agreed to convey property as part of their "joint venture" to develop Rose Lake.  There was no deed prepared that conveyed property to Dr. Hughes, and there were no other documents that memorialized the agreement.  Dr. Hughes's claim for breach of contract failed, and Dr. Hughes does not claim that was error.

¶34.    The initial question is whether the limitations period expired before this lawsuit was filed.  The majority claims that this is a factual question not addressed by the chancellor.  I disagree.

¶35.    The chancellor's ruling clearly stated he believed the statute of limitations had expired.  Specifically, the chancellor ruled:

> With this Court being unable to find said ratification, [Dr. Hughes] *cannot survive any analysis based upon any reading of any statue of limitations* that might apply as to the $33,000; in all likelihood at best a three-year statute of limitation as it relates to the $100,000 to Mr. Shipp.
>
> *Any statute of limitations that could possibly apply, we won't even get into it because it doesn't matter, has long since passed.*

¶36.    The majority addressed the chancellor's statute of limitations decision and determined that the chancellor tied the limitations period to "when Hughes made the payments and entered into what he thought were binding agreements that he would receive property in exchange."  Maj. Op. ¶ 14.  The majority concluded that

15

> We agree the chancellor apparently applied the wrong legal standard by tying the statute of limitations to when Hughes gave Tom and David the money. He should have instead looked to when Hughes knew or should have known he would receive neither the lots nor any benefit from the Shipps. We acknowledge there is record evidence suggesting Hughes's unjust-enrichment claim may not have accrued until much later than 2008. . . .
>
> The chancellor made no factual finding about when Hughes's unjust-enrichment claim accrued. Rather than resolve this factual question on appeal and declare his unjust enrichment-claim timely, as the Court of Appeals did, we find the better course is to remand to the trial court the question of when Hughes's unjust enrichment-cause of action accrued.

Maj. Op. ¶¶ 16-17.

¶37. There is no rule that requires the chancellor to state his factual finding.[4] Since our standard of review is deferential, and we review the chancellor's decision under a substantial evidence or manifest error standard, we must accept that the chancellor had sufficient evidence before him to view the evidence fairly and to find for the defendants. Under this standard, there is no evidence before the court that would obligate the chancellor to find for Dr. Hughes if his evidence was all the evidence offered in the case.

¶38. The chancellor's ruling clearly indicated that the chancellor determined that the limitations period has expired for the $100,000 payment. The payment was made to Tom Shipp, who is not a party to this action. Tom Shipp owned the Rose Lake property. He died on October 21, 2004.

¶39. At the date of his death, the Rose Lake development was not complete, and there was no documentation of Dr. Hughes's investment. Because of his death, the Rose Lake property

---

[4] Here, neither party asked the chancellor, under Mississippi Rule of Civil Procedure 52(a) or Uniform Chancery Court Rule 4.01, "to find the facts specially and state separately its conclusions of law thereon . . . ."

16

passed under the laws of descent and distribution—either according to Tom Shipp's will or by intestate succession. Any claim to the Rose Lake property owned by Tom Shipp or the business venture between Dr. Hughes and Tom Shipp was subject to the administration of his estate.

¶40. The business venture and agreement between Dr. Hughes and Tom Shipp had not been completed before Tom Shipp died. Yet, after Tom Shipp's death, Dr. Hughes had no legal interest in the Rose Hill property. The monies paid by Dr. Hughes to Tom Shipp could have been recovered by Dr. Hughes in the administration of Tom Shipp's estate. Certainly, because of Tom Shipp's death, Dr. Hughes had a claim against Tom Shipp's estate for either breach of contract or for a lien/equitable interest in the Rose Lake property. The chancery court could have resolved Dr. Hughes's claims for his property interest or the return of his investment (the $100,000) at that time.

¶41. However, Dr. Hughes did not probate a claim against Tom Shipp's estate. Dr. Hughes did not file a legal action to assert a breach-of-contract claim against Tom Shipp's estate. Dr. Hughes did not file a chancery court claim to assert a lien or any equitable interest in the Rose Lake property.

¶42. The Court of Appeals analysis was correct:

> The Defendants also argue that Dr. Hughes failed to follow the procedure set forth by Mississippi Code Annotated section 91-7-221 (Rev. 2018), which provides a mechanism to ask a decedent's estate to recognize a contract. Additionally, the Defendants maintain that Dr. Hughes failed to pursue a monetary claim against Tom's estate within ninety days of the estate's

17

first notice to creditors. *See* Miss. Code Ann. § 91-7-151 (Rev. 2018).[5] The Defendants assert that even if no estate proceeding had occurred, Dr. Hughes was still required to file a notice of his claim against Tom's estate within three years and ninety days of Tom's death, which Dr. Hughes failed to do.

In response, Dr. Hughes argues that he is not seeking land or money from Tom's estate; rather, he is seeking a judgment in rescission and unjust enrichment from the Defendants. Dr. Hughes asserts that after Tom's estate was closed, the Defendants ratified and agreed to enforce the July 21, 2004 written agreement and therefore the Defendants are personally liable. Dr. Hughes maintains that as a result, Tom's estate is irrelevant.

Dr. Hughes executed the written agreement with Tom on July 21, 2004. Tom died on October 21, 2004. A glaring issue before this Court is the fact that at no point during these proceedings has Dr. Hughes filed a claim against Tom's estate. In his complaint, Dr. Hughes states that "[b]ased on Tom Shipp's written representation . . . that he was going to develop said gated community, on July 21, 2004, [Dr. Hughes] delivered Tom Shipp a check in the amount of $100,000.00 in order to participate in the joint venture to develop said community." The agreement was between Dr. Hughes and Tom, yet Dr. Hughes filed his complaint for breach of contract against Dave, Sandy, and Rose Lake. As we have stated, "[a] contract cannot bind a nonparty.*" Colyer* [*v. First United Methodist Church of New Albany*], 214 So. 3d 1084, 1088 (¶ 18) (Miss. Ct. App. 2016).

Mississippi Code Annotated section 91-7-221 states as follows:

If any person sell lands, enter into contract to make title, and die before the title be made, then the person to whom the title was

---

[5] Mississippi Code Section 91-7-151 (Rev. 2018) states that

[a]ll claims against the estate of deceased persons, whether due or not, shall be registered, probated and allowed in the court in which the letters testamentary or of administration were granted within ninety (90) days after the first publication of notice to creditors to present their claim. Otherwise, the same shall be barred and a suit shall not be maintained thereon in any court[.]

The record reflects that Dr. Hughes did not receive notice by the defendants of Tom's death. At trial, counsel for the defendants stated that it was unclear whether Dr. Hughes held the status of a creditor of Tom's estate. Counsel for the defendants maintained that the $100,000 constituted an "investment" and "is not recoverable" from Tom's estate.

to be made, his heirs or assigns, may petition the court which granted the letters on the estate of the vendor, for an order on the executor or administrator to make title agreeably to the contract. After the parties interested have been cited by summons or by publication, the court shall hear the petition and evidence, and may decree that the executor or administrator make title according to the contract.

This statute provides a procedure allowing persons seeking to ask a decedent's estate to recognize a contract. Additionally, Mississippi Code Annotated section 15-1-55 states that "[i]f a person . . . liable to any such action, shall die before the expiration of the time herein limited therefor, such action may be commenced . . . against the executor or administrator of the deceased person, after the expiration of said time, and within one year after the death of such person." At trial, Dr. Hughes admitted that after learning about Tom's death, he made no inquiry as to whether there was any estate proceeding and he did not file a claim against Tom's estate.

Dr. Hughes then appears to assert in his complaint that because Sandy was Tom's sole beneficiary and "inherited all real property, along with fixtures and improvements, which would constitute the development in issue[,]" she therefore became a party to the July 21, 2004 written agreement between Tom and Dr. Hughes. However, this Court has found no valid ratification by the Defendants of the written agreement.

*Hughes v. Shipp*, No. 2018-CT-01654-COA, 2020 WL 5525383, at *14-15 (Miss. Ct. App. Sept. 15, 2020).

¶43. The Court of Appeals does not expressly state its conclusion. However, it is clear that the evidence offered at trial indicated that there was a breach of the agreement between Dr. Hughes and Tom, not upon receipt of the $100,000 but instead upon his death. Tom did not complete his performance under their agreement. Dr. Hughes knew or should have known that the Rose Lake property was about to pass to Tom's beneficiary(ies) or heir(s). The majority suggests that "the record is *unclear*" as to Dr. Hughes's unjust-enrichment claim. Maj. Op. ¶ 20. I disagree. Dr. Hughes did not present the evidence that the majority suggests

19

is "unclear" and should be resolved on remand. Maj. Op. ¶ 20. In fact, no evidence was presented at trial that "Sandy and David, through the now-defunct Rose Lake, LCC, were still unjustly enriched by Hughes $100,000 investment." *Id.* The majority simply gives Dr. Hughes a second bite at the apple to prove a case he did not prove at trial.

¶44. Here, the chancellor's decision to grant an involuntary dismissal under Rule 41(b) of the Mississippi Rules of Civil Procedure recognized that Dr. Hughes had a legal right to pursue claims against Tom Shipp's estate for his legal or equitable interest in the title to Rose Lake property or the return of his $100,000 investment paid to Tom Shipp. However, although Dr. Hughes had the opportunity to make a claim against the estate, he failed to do so. Dr. Hughes admitted that, after learning of Tom Shipp's death, he made no inquiry as to whether there was an estate proceeding, and he did not file a claim within three years and ninety days of Tom Shipp's death as required by Section 91-7-91.

¶45. The chancellor was correct to dismiss Dr. Hughes claims for unjust enrichment based on the 2004 payment of $100,000 to Tom Shipp as being outside of the three-year limitations period.

¶46. Also, there is no explanation by the majority, the brief of Dr. Hughes or the argument of his counsel at trial, how the defendants, who were not a party to the 2004 agreement, are personally liable now seventeen years later.

¶47. Somehow, with an agreement between Dr. Hughes and Tom Shipp, the majority now sanctions a claim for unjust enrichment against defendants—David, Sandy, and Rose Lake. As, the Court of Appeals noted, "[a] contract cannot bind a nonparty." *Colyer*, 214 So. 3d

20

at 1088 (¶ 18).  Likewise, there is no evidence or law before the Court that would make David, Sandy, or Rose Lake personally liable to Dr. Hughes for the 2004 investment.

¶48.   The petition for writ of certiorari states that "Dr. Hughes advanced a total of $133,000.00 *to the Defendants . . . .*"  (Emphasis added.)  The evidence does not support this statement.  There is no evidence in the record that "Dr. Hughes advanced $133,000 to the Defendants"—David, Sandra or Rose Lake.

¶49.   The appropriate action for Dr. Hughes to recover his $100,000 payment to Tom Shipp required that he pursue it against the Tom Shipp's estate.  Tom Shipp's widow and son, even if they are beneficiaries or heirs, do not by operation of law become personally liable.

### B.    Claims against Sandy and Rose Lake

¶50.   There is simply no evidence in the record to establish that Sandy or Rose Lake were unjustly enriched or received any benefit of Dr. Hughes's $133,000 in payments.[6]  The petition confirms this and confesses that there was no evidence that Sandy or Rose Lake received any benefit of these funds. Therefore, the chancellor's involuntary dismissal of Sandra Humphreys Shipp and Rose Lake LLC should be affirmed.

### C.    Dr. Hughes's 2008 Payment to David Shipp

---

[6]  Dr. Hughes's petition for writ of certiorari states:

> The Defendant Dave Shipp enjoyed Dr. Hughes' money to build himself a lake, stock it  with fish, and build and move into a new dwelling that overlooked all the property. This new structure was described by the chancellor as Dave Shipp's 'shiny new house' on the hill, built with the money from Dr. Hughes. R 512. To say the least, the Defendants were unjustly enriched to the detriment of Dr. Hughes.

21

¶51. I concede that evidence creates a factual question as to whether David Shipp was unjust enriched by Dr. Hughes 2008 payment of $33,000 to him. Indeed, there was evidence that David Shipp received and may have benefitted from Dr. Hughes's payment of $33,000 to him. However, it also appears clear that the chancellor considered the evidence of David's expenditures on the development of the property to conclude that he was not unjustly enriched. Instead, the $33,000 went into the Rose Lake development, but it was not a financially viable investment.

¶52. The majority points to the chancellor's statement that David "now lives in a nice pretty shiny new house, with fish that he basically stole, on land that it appears potentially Mr. Hughes had quite a bit of impact on providing that lifestyle." Maj. Op. ¶ 13 (internal quotation marks omitted). However, the record does not evidence that any of the $133,000 paid by Dr. Hughes went directly to pay for the construction of David's home or to pay for his lifestyle. There was evidence that David spent monies to stock the lake with fish, but that was an expense that was reasonably related to the business venture of developing the Rose Lake property and making it interesting to prospective buyers. There was other evidence of expenditures that would have been reasonable and necessary to develop the Rose Lake property.

¶53. For these reasons, I would affirm the decision of the chancellor and the Court of Appeals. I respectfully dissent.

**RANDOLPH, C.J., JOINS THIS OPINION.**

22