# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-CA-00167-SCT

*MAGNOLIA HEALTH PLAN, INC., AND*
*CENPATICO BEHAVIORAL HEALTH, LLC*

*v.*

*MISSISSIPPI'S COMMUNITY MENTAL HEALTH*
*COMMISSIONS, REGION ONE MENTAL*
*HEALTH, NORTH MS COMMISSION ON MI/MR*
*D/B/A COMMUNICARE, NORTHEAST MENTAL*
*HEALTH - MENTAL RETARDATION*
*COMMISSION, REGION III D/B/A LIFECORE*
*HEALTH GROUP, REGION IV MENTAL*
*HEALTH SERVICES D/B/A TIMBERHILLS,*
*REGION 6 COMMUNITY MENTAL HEALTH*
*COMMISSION D/B/A LIFE HELP, REGION VII*
*MENTAL HEALTH/INTELLECTUAL*
*DISABILITIES COMMISSION D/B/A*
*COMMUNITY COUNSELING SERVICES,*
*REGION 8 MENTAL HEALTH SERVICES, HINDS*
*BEHAVIORAL HEALTH SERVICES, REGION 10*
*STATE OF MS D/B/A WEEMS COMMUNITY*
*MENTAL HEALTH CENTER, SOUTHWEST*
*MISSISSIPPI MENTAL HEALTH AND*
*RETARDATION COMMISSION-REGION 11 D/B/A*
*SOUTHWEST MISSISSIPPI MENTAL HEALTH*
*COMPLEX, REGION XII COMMISSION ON*
*MENTAL HEALTH AND RETARDATION D/B/A*
*PINE BELT MENTAL HEALTHCARE*
*RESOURCES, GULF COAST MENTAL HEALTH*
*CENTER, SINGING RIVER MENTAL*
*HEALTH/MENTAL RETARDATION SERVICES,*
*REGION XIV AND WARREN YAZOO*
*BEHAVIORAL HEALTH, INC.*

DATE OF JUDGMENT:          01/21/2020
TRIAL JUDGE:              HON. ELEANOR JOHNSON PETERSON

TRIAL COURT ATTORNEYS:     CHARLES EDWARD COWAN
JOHN P. SNEED
GEORGE H. RITTER
TIMOTHY LEE SENSING
TREMARCUS D'RAY KESHON ROSEMON
HUGH RUSTON COMLEY

COURT FROM WHICH APPEALED:     HINDS COUNTY CIRCUIT COURT

ATTORNEYS FOR APPELLANTS:     TIMOTHY LEE SENSING
TREMARCUS D'RAY KESHON ROSEMON
KATIE B. LYONS
HUGH RUSTON COMLEY

ATTORNEYS FOR APPELLEES:     GEORGE H. RITTER
JOHN P. SNEED
CHARLES EDWARD COWAN

NATURE OF THE CASE:     CIVIL - STATE BOARDS AND AGENCIES

DISPOSITION:     AFFIRMED IN PART; DISMISSED IN PART
AND REMANDED - 10/28/2021

MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE RANDOLPH, C.J., COLEMAN AND CHAMBERLIN, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.    Magnolia, a managed care organization that contracts with the State to provide Medicaid services, applied what it saw as a statutory 5 percent reduction in Medicaid rates to Mississippi's fourteen regional mental health providers. The regional providers responded by filing a complaint against Magnolia in which they sought injunctive relief and monetary damages.

¶2.    On February 18, 2020, Magnolia Health Plan, Inc., and Cenpatico Behavioral Health, LLC (collectively, "Magnolia"), filed a timely notice of appeal after the Circuit Court for the First Judicial District of Hinds County denied Magnolia's motion to compel arbitration and granted a preliminary injunction against it in favor of Defendants, Mississippi's fourteen

regional health commissions. The notice of appeal includes both orders. As to the first, the order denying Magnolia's motion to compel arbitration, at oral argument before the Supreme Court panel Magnolia abandoned the issue. As to the second, the order granting Magnolia's request for a permanent injunction, the order is not a final, appealable judgment. Accordingly, we do not have jurisdiction.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

¶3.    Magnolia is "one of the managed care organizations (MCOs) contracted by the state of Mississippi to provide Medicaid services under the Mississippi Division of Medicaid's (DOM's) managed care program established pursuant to [Mississippi Code Section 43-13-117(H)] and known as 'MississippiCAN.'" Magnolia provides managed care services in exchange for specified, capitated fees; "[s]pecifically, [DOM] pays Magnolia a 'capitated' per member per month rate or fee to provide covered services to Medicaid members enrolled with Magnolia." And Magnolia "enters into provider agreements with various network providers to provide healthcare services to Medicaid beneficiaries enrolled in Magnolia's plan."

¶4.    The appellees are the fourteen, public regional health commissions established by Mississippi Code Section 41-19-31 and -33 (Rev. 2018); "[e]ach regional commission operates a [Community Mental Health Center (CMHC)] to provide facilities and services for the prevention and treatment of mental illness, mental disorders, developmental and learning disabilities, alcoholism, narcotic addiction, drug dependence and other related handicaps or

3

problems." (citing Miss. Code Ann. § 41-19-33(1)(c)). All appellees here participate in the Mississippi Medicaid program.

¶5. The circuit court described the underlying contractual attraction between the parties as follows:

> Medical providers that provide medical services to patients enrolled in the Medicaid program are generally paid pursuant to one of two types of models: (1) a "fee-for-service" model--i.e., payments made directly by the Division of Medicaid (DOM); or (2) a managed care model--i.e., payments made by Medicaid contracted managed care organizations (MCOs).
>
> Under a traditional fee-for-service model, the state agency itself makes direct payments for the services to the healthcare provider. 42 U.S.C. § 1396a. Providers submit claims for reimbursement directly to that executive agency, in this case DOM. The rate DOM will pay the provider is predetermined by a fee schedule fixed by DOM. In the managed care model, the state contracts with private managed care organizations ("MCOs"), like Defendant, to provide medical benefits to Medicaid beneficiaries. See 42 U.S.C. § 1396b(m) (2000); 42 C.F.R. § 438.6(c).

¶6. In 2012, Magnolia and Cenpatico entered into provider agreements with the fourteen community health centers to "provide mental health services to . . . Medicaid beneficiaries enrolled in Magnolia's plan." And "[f]rom late 2012 through 2018, Magnolia paid the CMHCs exactly as the Provider Agreements required." The current dispute began in 2018, which coincided with the year Mississippi Code Section 43-13-117(B) (Supp. 2020) was amended "to include outpatient hospital services to the list of those services excluded from subsection (B)'s 5 percent rate reduction." Being advised by DOM, Magnolia seemingly saw the revision as "appl[ying] to services regardless of delivery model." And in February 2019, Magnolia began applying the 5 percent rate reduction to its payments to the community health centers for mental health services.

4

¶7. Then, "[b]etween early May and September 27, 2019, without first amending the contracts, Magnolia wrote each of the CMHCs to inform them that it had imposed an across-the-board 5% rate cut on all payments effective January 1, 2019." The community health centers argued that the rate cut resulted in Magnolia's "paying less than the 'normal Magnolia reimbursement rate' as required by Miss. Code Ann. § 43-13-117(H)(1)(c)." In addition, Magnolia began asserting recoupments for alleged overpayments made, spanning back to July 1, 2018. The community health centers assert that the overpayments ranged from $26,988.45 to $239,172.09 and that the overall total was $1,347,946.86.

¶8. The community health centers then sent Magnolia letters protesting the recoupments and rate cut. In addition, they asserted that the mandatory arbitration provision was unenforceable "against public entities under the Mississippi Constitution and statutes." While Magnolia asserts today that "[n]o mediation or arbitration occurred[,]" many of the letters acknowledged participation in "informal dispute resolution . . . provided that Magnolia agreed in writing not to implement any recoupments until after such efforts are complete." Magnolia did not cease and desist.

¶9. On November 7, 2019, the community health centers filed their Complaint for Damages and Injunctive Relief. Therein, the health centers prayed for not only an injunction against Magnolia but also monetary damages for lost revenue and damages to their businesses and operations. The health centers also requested punitive damages.

¶10. Later, the health centers filed a motion for a preliminary injunction against Magnolia, alleging breach of contract and violations of Mississippi law. The community health centers

asked the circuit court to prohibit Magnolia from applying the 5 percent rate cut, paying the community health centers less than the normal Medicaid reimbursement rates found in the Medicaid Fee Schedule, and going forward with the recoupments. Magnolia opposed the motion and filed a motion to compel arbitration and stay proceedings. The health centers then opposed Magnolia's motion, staying consistent with their prior letters stating that the provisions were unenforceable against public entities under Mississippi law, were neither mandatory nor binding, and were unenforceable due to unconscionability.

¶11. A hearing was conducted in the circuit court on January 9 and 16, 2020. And on January 21, 2020, the circuit court entered an order denying Magnolia's motion to compel arbitration, and additionally, it granted the community health centers' request for a preliminary injunction. A few days later, on Magnolia's own motion, the trial court entered the second order Magnolia seeks to appeal converting the preliminary injunction to a permanent one.

## DISCUSSION

¶12. The parties present the following three issues in their briefs:

    I.     Whether the circuit court erred by denying Magnolia's motion to compel arbitration and stay proceedings.

    II.    Whether the circuit court erred by granting the permanent injunction against Magnolia, barring it from asserting the 5 percent rate cut and recoupments.

    III.   Whether Magnolia waived its right to appeal by filing its Motion to Convert Preliminary Injunction Order into Permanent Injunction and to Stay Execution.

However, during oral argument Magnolia abandoned the first issue, and the Court lacks jurisdiction to decide the second and third issues. Appeals taken from denials of motions to compel arbitration are not interlocutory but are final judgments for purposes of appeal. *Tupelo Auto Sales Ltd. v. Scott*, 844 So. 2d 1167, 1170 (Miss. 2003).

¶13. At oral argument when asked whether Magnolia was abandoning its assertion in its principal brief that, "while [Regions 10 and 12] may not be required to arbitrate, they were still contractually required to participate in a mediation before filing this lawsuit[,]" Magnolia's counsel directly conceded that "[Regions 10 and 12] did not have arbitration agreements." Because Magnolia abandoned its first issue on appeal during argument, we decline to address it. *See Anderson v. LaVere*, 136 So. 3d 404, 411 (¶ 32) n.14 (Miss. 2014).

¶14. The final two of the three issues on appeal arise from the trial court's order granting Magnolia's motion to convert the temporary injunction to a permanent injunction. Although the parties do not raise the issue of our jurisdiction to address the order, we must, when necessary, examine the record to determine the jurisdictional issue *sua sponte*. *M.W.F. v. D.D.F.*, 926 So. 2d 897, 899 (¶ 4) (Miss. 2006) (citing *Williams v. Delta Regional Medical Center*, 740 So. 2d 284, 285 (Miss. 1999)). In short, we do not have jurisdiction to decide direct appeals of interlocutory orders. *Rogers v. Estate of Pavlou (In re Estate of Pavlou)*, 308 So. 3d 1284, 1287 (¶ 9) (Miss. 2021). An order is interlocutory rather than final when it "adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties." *Id.* at 1287 (¶ 11) (internal quotation marks omitted) (quoting *M.W.F.*, 926 So. 2d at 900 (¶ 4)).

7

¶15. As noted above, the regional providers' complaint against Magnolia included claims for monetary and punitive damages in addition to the prayer for injunctive relief. The order Magnolia seeks to appeal, *i.e.*, the order granting its motion to convert the preliminary injunction to a permanent one, does not dispose of any of the regional providers' claims for monetary damages. We have reviewed the record, and we find no other order or judgment disposing of the providers' claims for damages. The order Magnolia seeks to appeal, then, is not final, and we lack jurisdiction. We reached the same conclusion in the recent case of ***Carr v. Mississippi Lottery Corp.***, 314 So. 3d 108 (Miss. 2021). Accordingly, we do not have jurisdiction to address it pursuant to Magnolia's notice of appeal.

## CONCLUSION

¶16. We decline to address Magnolia's argument, found in its brief, that the trial court erred by denying its motion to compel arbitration, because Magnolia expressly abandoned the issue during oral argument. We dismiss Magnolia's appeal of the order granting its motion for a permanent injunction for lack of jurisdiction.

¶17. **AFFIRMED IN PART; DISMISSED IN PART; REMANDED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., MAXWELL, BEAM CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**

8